# Oliver *v.* Robinson.

### *Real Action in the Nature of Ejectment.*

1. *Tax sale; what law determines validity of.*—The validity of a tax sale depends upon the law in force when it is made.

2. *Same; what essential to validity of.*—Presumptions are not indulged in favor of the regularity of proceedings for the sale of land for non-payment of taxes; and the party claiming title under them, must show that all the substantial requirements of the law, authorizing such sales, have been fully complied with.

3. *Same; what will excuse demand on owner, and search for personalty.*—Where the owner of lands remains *bona fide* unknown, after proper effort to ascertain the ownership, it will dispense with necessity for demand on him, or search for personal property.

4. *Same; when lands can not be assessed to "unknown owner."*—Lands can not lawfully be assessed to "unknown owner," if, at the time of making the assessment, the officer had the means of ascertaining, by proper inquiry and search, who the owner was—such as the owner's occupation or open possession, or other information which would make known the owner; and having such means of information, he can not assess the lands to "unknown owner," and sale under the assessment would be void.

5. *Act of February 26th, 1872; what not a compliance with.*—Under the act of February 26th, 1872, "to establish additional revenue laws for the State of Alabama," which governed a tax sale made in July of that year, it is provided that "taxes not entered by the assessor in his assessment books, shall not be collected by the tax assessor, unless an assessment thereof shall have been made and entered by him on the assessment books, both original and copy, under the supervision of the probate judge;" and an entry on a small "supplemental book" by the tax collector, of an assessment against property, to "unknown owner," which had escaped the assessor, no assessment having been made on the assessment books, original or copy, under the supervision of the probate judge, will not uphold such assessment, or a sale made under it.

Vol. lviii.

[Oliver v. Robinson.]

6.  *Mistake in description of lands ; when will avoid sale.*—If there is a material difference in the description of the numbers of lands as assessed and as advertised—as a difference in the range in which they are situate—a purchaser at tax sale, will take no title to the lands thus misdescribed.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JAMES Q. SMITH.

The appellee, Thomas Robinson, brought his statutory real action against the appellant, Mary E. Oliver, to recover a tract of land belonging to her, which had been assessed to "owner unknown," and purchased by the appellee Robinson at a tax sale.   Two years having elapsed, and the property not having been redeemed, the probate judge made and delivered a deed of the lands to Robinson, who thereupon brought suit.

A part of the land sued for was described in the tax deed and in the complaint, as the northeast quarter of northeast quarter of section 29, township 17, range *19;* but there was no entry made by the tax collector, as shown by said supplemental book, of the lands by that description ; "but there was an assessment of northeast quarter of northeast quarter of section 29, township 17, range *18*, which the tax collector testified was a clerical error, and meant to be the lands just above named."

On the trial, evidence was offered that the tax collector had ample means of ascertaining who was the owner of the land, but that he neglected or refused to avail himself of it. This evidence, which is fully stated in the opinion, was ruled out on the objection of the plaintiff, and the defendant duly excepted.

In the charge given by the court, the jury were instructed, among other things, "that the failure of the tax-collector to use means which might be had, to ascertain the true owner of the land, can not effect the plaintiff's right to recover, unless there is proof tending to show fraud, and the plaintiff had knowledge of the fraud."   The defendant excepted to this portion of the charge, as also to the refusal of the court to receive the proffered evidence, and to give the following written charges, requested by the defendant :   "4. If the jury believe from the evidence that the tax-collector had offered to him, means of ascertaining the ownership of the lands in question, and failed or refused to avail himself of such means, then a sale of such lands as unknown lands, is void."

"5. If there is a difference of the description of the numbers of the lands, in the assessment and advertisement for sale of unknown lands, then the tax-title, under a sale of

such lands, gives no title to the purchaser of such lands un-
described in the assessment."

There was a verdict and judgment for the plaintiff, and
the defendant appeals.

The charge of the court, the refusals to charge as requested,
and the exclusion of the proof offered, are now assigned as
error.

F. C. RANDOLPH, for appellant.

RICE, JONES & WILEY, contra.

STONE, J.—The present statutory real action was brought
to recover lands which the appellee had purchased at tax-
sale—the purchaser relying on a deed from the tax-collector
to support his title. The tax-assessor of the county had
failed to assess the taxes on these lands for the year 1871,
and they were assessed by the collector in the month of Jan-
uary or February, 1872, to "owner unknown." The tract,
240 acres, was sold in July, 1872, and purchased by appellee,
for the sum of $52.50, the amount of taxes, costs, and ex-
penses attending such assessment and sale, for taxes of the
year 1871. The tax-collector testified, "that he assessed
lands named in complaint, for escaped taxes of 1871, to
owner unknown; that he entered such assessment in a small
supplemental book, which was produced, and contained as-
sessments of all lands that had escaped assessment and tax-
ation for the year 1871, of both known and unknown owners.
That he assessed said lands of unknown owners in no other
book than said supplemental book and his sales-book, a copy
of which sales-book, or record of sales, he furnished to the
judge of probate and treasurer of said county. That he en-
tered said assessment of lands of unknown owners in said
supplemental book, because there was no room in back part
of the original assessment book—which latter fact he made
known to the probate judge and Court of County Commis-
sioners, who furnished witness with said supplemental book,
and directed him to make the entry of assessment of lands
of unknown owners in said book."

The tax-assessor was introduced and testified, "that he
had not assessed lands named in complaint for the year
1871—that they had escaped him." Defendant then offered
to prove by this witness that, before the advertisement and
sale of said lands by the tax-collector, as lands of unknown
owner, he [the assessor] offered to lend to the tax-collector a
map or plat of all the taxable lands in the county of Mont-
gomery, showing the owners thereof; which said map was

[Oliver v. Robinson.]

made for the private use of witness [the assessor], and was not authorized by the probate judge, or Court of County Commissioners of said county. The said map or plat was shown to the court, and had the lands sued for marked across their face, with name of defendant as owner. Witness testified that the tax-collector, Robinson, refused to make use of said map or plat, saying he had a better one." This testimony was ruled out, and defendant excepted.

In the revenue law, which was in force at the time this assessment was made—Pamph. Acts, 1868, p. 227—are the following provisions :

Section 31. "That the assessors shall give at least fifteen days notice, by bills posted at five or more public places in each election precinct, and twenty days notice in the official newspaper for the county, of the time and place, in each election precinct, that he will attend to assess the taxes.

Sec. 32. "That upon the failure of the assessor to attend any appointment made by him in any precinct, he shall, after legal notice, fill a new appointment; or, at his option, forfeit all claims to fees from such persons in such precincts as were disappointed by his non-attendance as assessor.

Sec. 34. "That, after the assessor shall have completed his sittings, as required by section 31 of this act, in each year, he shall make a demand, in person or by deputy, upon delinquent tax-payers, or such as have failed to meet him at his appointments, wherever he may find them; and when unable to find them, he may leave a written notice at the residence of each such delinquent, and it shall be the duty of such delinquent to make a return to the assessor before the first day of June following.

Sec. 35. "That having failed to procure from any delinquent a list of taxable property, before the first day of June, the assessor shall ascertain from inquiry, or otherwise, the property and other items of taxation, upon which such person is liable to be taxed, to the best of his information and judgment.

Sec. 38. "That it shall be the duty of the assessor to make out a complete list of all the lands in his county subject to taxation, in a book properly ruled and bound, and beginning with the lowest section, township and range, and proceeding in numerical order to the highest, setting opposite each division, or subdivision of section, the name of the reputed owner thereof; and when the owner is not known, these words, "owner unknown." Such statement or list shall be included in the same volume with the assessment of tax."

If the tax-assessors would conform faithfully to these stat-

(4)

utory requirements, there would be few persons who could escape them ; and it would seem that, in the nature of things, but little land would have to be assessed to 'owner unknown.' The 'complete list of all the lands in his county subject to taxation,' together with 'the name of the reputed owner thereof,' set 'opposite each division or subdivision,' which section 38 requires him to make, when considered in connection with his duty to visit every part of the county, would seem reasonably to forbid that there could be much land in any county, the owner, or reputed owner of which he could not easily learn. Possession and occupation of lands, in the absence of all other proof, is *prima facie* evidence of ownership, and is constructive notice to all persons acquiring an adversary interest, of every right, legal or equitable, which such possessor owns.—2 Brick. Dig. 627, §§ 39, 40, 41 ; *Anderson v. Melear*, Dec. term, 1876 ; 2 Brick. Dig. 519, § 181. When the owner or claimant, or any one holding under him, is in the actual occupation, the assessor is without excuse for assessing such lands to "owner unknown." While ascertaining, 'from inquiry or otherwise, the property and other items of taxation,' and the value of the same, with a view of assessing the taxes upon it, under section 35 of the act, it would add little or nothing to his labors, to inquire for the reputed owner or occupant of the property, if real estate. And personal property is rarely so disconnected from all possession and claim of ownership, as that the owner is not discovered, at the same time the property is. And the duty of demanding in person, or by deputy, or by written notice, when unable to find them, that delinquents shall make a return of the subjects of taxation for which they are liable, goes still further in disarming the assessor of all excuse for leaving his assessments incomplete. To sum up : it is the duty of the tax-assessor, after giving very ample notice, to furnish to each tax-payer an opportunity to meet him, in the tax-payer's own precinct, under sections 31 and 32 of the act of 1868. He is now required to furnish him two such opportunities.—See Pamph. Acts 1875-6, p. 55, chap. 5, sec. 2. He is also required to make and have a complete list of all the lands subject to taxation in his county, with the name of the reputed owner set opposite each division or subdivision.—Act of 1868, § 38 ; Act of 1875-6, ch. 5, § 9. Delinquents who fail to meet the assessor at his precinct appointments, are then entitled to demand or notice, under section 34 of the act of 1868 ; ch. 5, § 4 of the act of 1875-6. After, and only after the observance of these statutory requirements, is the assessor authorized to make the assessment, upon the property and other items of taxation belonging to the delin-

[Oliver v. Robinson.]

quent, ascertained from inquiry or otherwise.—Act of 1868, § 35 ; Act of 1875-6, ch. 5, § 5.   In addition to the foregoing mandatory injunctions of duty found in the revenue law of 1868, under the act of 1875-6, ch. 5, § 7, it is declared, "That the tax-assessor shall, before he begins the assessment in each year, file in the probate court of his county an affidavit that he will diligently and carefully seek to ascertain each and every article and subject of taxation within his county, and that he will faithfully discharge all the duties imposed on him by law."   This oath imposed no new duty upon him. It only solemnized existing duties by the sanction of an official oath.

Section 50 of the act of 1868 declares, "That it shall be the duty of the tax-collector, while engaged in the collection of taxes, to assess the taxes of persons who have escaped the tax, assessor, entering up all such assessments in the back part of the books of assessments for each year."   Same provision in act of 1875-6, p. 61, ch. 6, § 7, with slight change. The purpose and spirit of this section were and are, that if persons liable to be assessed, had escaped the tax-assessor, and the tax-collector, while engaged in the collection of taxes, discovered such persons, it was made his duty to assess the same, entering the assessment as the statute provides.   The statute then made it the duty of the tax-collector, after giving the required notice of time and place, to attend in each precinct, for the purpose of receiving the taxes due from the several tax-payers.—Act of 1868, §§ 45 and 46.   The act of 1875-6, requires him to attend for such purpose, after proper notice, twice in each precinct.—Ch. 6, §§ 2, 3, 4.   After filling these appointments, the tax-collector was required, under the act of 1868, § 48, to be present at the office of the treasurer of the county, for five days previous to the first of December, to afford tax-payers a further opportunity of there paying their taxes ; and under the act of 1875-6, to be present at the county site for five days next preceding the first day of January, for the same purpose.—Ch. 6, § 5.   After this, it was and is the duty of the tax-collector to make a personal or written demand on the tax-payer, before resorting to coercive measures to collect the taxes—Act of 1868, § 49 ; act of 1875-6, ch. 6, sec. 6.   Of course, this notice would be dispensed with, where, after reasonable inquiry and diligence, the owner not being found, it could be safely and conscientiously affirmed that the *owner* is *unknown*.

In the forced collection of taxes, it is the duty of the collector to first levy upon personal property, if to be found. Act of 1868, § 53 ; act of 1875-6, ch. 6, § 9.   Perhaps it was not necessary to search for personal property in this case, as

the lands were assessed to 'owner unknown.' If the owner was really unknown, and could not be ascertained with reasonable diligence, such would, without doubt, be the rule. The collector could have no guide in such a search. We have stated the rule for the purpose of showing how zealously the law screens lands from unnecessary sale, in payment of taxes.

"Where no personal property can be found, with reasonable search, the tax-collector shall proceed against the real estate of any delinquent tax-payer, in the manner hereinafter provided."—Acts of 1868, § 54; Acts of 1875-6, ch. 6, § 14.

We have shown above that the tax-assessor and tax-collector had many opportunities to learn and know who was the owner of the lands in controversy. If the tax-assessor had observed his plain duty, he would have assessed the lands to Mrs. Oliver; for he had a map of the lands, on which her name was marked as owner. She was probably in possession, and this should have notified both the assessor and collector, while they were ascertaining the value of the land for assessment, that she was the owner. Moreover, the assessor testified, and he was uncontradicted, that he tendered to the collector the use of his map of the lands of the county, with the names of the owners marked across the several tracts, and that the latter declined to accept it, saying he had a better one. It is manifest that proper inquiry and search were not made, to ascertain who was the owner of these lands. Lands can not be lawfully assessed to 'owner unknown,' when the owner is known; and if the assessor or collector, who makes assessment, has, at the time, the means of ascertaining who the owner is—such as open possession by the owner—this is equivalent to actual knowledge, and will avoid a sale made under such assessment.—*Proprietors of Cardigan v. Page*, 6 N. H. 182; *Brown v. Veazie*, 25 Maine, 359; *Ainsworth v. Dean*, 21 N. H. 400.

There is another fatal defect in the appellee's title. The assessment of taxes by the collector was made in January or February, 1872. On the 26th February, 1872, the act was approved "to establish additional revenue laws for the State of Alabama."—Pamph. Acts, 4. By the 8th section it is enacted, "That taxes not entered by the assessor in his assessment book, shall not be collected by the tax-collector; until an assessment thereof shall have been made and entered by him in the assessment books, both original and copy, under the supervision of the judge of probate." The sale in the present case was made more than four months after the enactment of this statute, and the record proves the requirements of this statute were not complied with.

[Oliver v. Robinson.]

That portion of section 87 of the revenue law of 1868—page 325—which declares that a deed made pursuant to a tax sale, shall be conclusive evidence of certain prerequisite facts, seven in number, has been repeatedly adjudged unconstitutional by this court.—See *Davis v. Minge,* December term, 1876. The facts, of which it is declared to be *prima facie* evidence, are not involved in the questions discussed above, and exert no influence in their solution.

In a sale of land for taxes, great strictness is required. To divest an individual of his property, every substantial requisite of the statute must be complied with. No presumption can be raised in behalf of a collector who sells real estate for taxes, to cure any radical defect in his proceedings; and the proof of regularity devolves upon the person who claims under the collector's sale.—See 2 Brick. Dig. 469, §§ 28, 34, 35, 38.

In *Brown v. Veazie,* 25 Maine, 359, it is said, "To make out a valid title to land sold to obtain payment of taxes assessed thereon, the purchaser under a collector's sale must show that the provisions of law preparatory to, and authorizing such sales, have been punctiliously complied with." See *Shimruin v. Inman,* 26 Me. 228.

In Cooley on Taxation, 324, that profound jurist summarized the doctrine on this subject in the following forcible terms : " Tax sales are made exclusively under a statutory power. The officer who makes them sells something he does not own, and which he can have no authority to sell, except as he is made the agent of the law for the purpose. But he is made such agent only by certain steps which are to precede his action, and which, under the law, are conditions to his authority. If these fail, the power is never created. If one of them fails, it is as fatal as if all failed. Defects in the conditions to a statutory authority can not be aided by the courts; if they have not been observed, the courts can not dispense with them, and thus bring into existence a power which the statute only permits when the conditions have been fully complied with. Neither, as a general rule, can the courts aid the defective execution of a statutory power; they may do this when the power has been created by the owner himself, and when such action would presumptively be in furtherance of his purpose in creating it; but a statutory power must be executed according to the statutory directions; and, presumptively, any other execution is opposed to the legislative will, instead of in furtherance of it. It is, therefore, accepted as an axiom when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance

[Tuscaloosa Scientific and Art Association v. State ex rel. A. O. Murphy.]

with the law, in all the proceedings of which the sale was the culmination. This would be the general rule in all cases, in which a man is to be divested of his freehold by adversary proceedings; but special reasons make it peculiarly applicable to the case of tax sales.

In the charge of the court given, and excepted to by appellant, and in refusing charges 4 and 6, requested by appellant, the Circuit Court erred.

There was also error in rejecting the proof offered to be made by the tax-assessor.

The law affecting the questions described above, has been changed by the act "To provide for the collection of delinquent taxes," approved February 9, 1877.—Pamph. Acts, 20. That statute does not affect this suit.

Reversed and remanded.