# Crook *v.* Anniston City Land Co.

*Statutory Action in nature of Ejectment.*

1. *Sale of lands for taxes; assessment against wrong person as owner.* A valid assessment is the initial step and foundation of statutory proceedings to sell land for the payment of delinquent taxes; and when the owner is known, or by proper inquiry and search can be ascertained, an assessment against another person as the owner, followed by a decree of condemnation and sale, confers no title on the purchaser; nor does a different principle apply when, the State having become the purchaser at the sale, the land is afterwards assessed as before (Sess. Acts 1878–9, p. 8), and sold for subsequent taxes.

APPEAL from the Circuit Court of Calhoun.

Tried before the Hon. LEROY F. BOX.

This action was brought by Emmett F. Crook against the Anniston City Land Company, to recover a tract of land described as the north-west quarter of the north-east quarter of section five (5), township sixteen (16), range eight (8) East; and was commenced on the 10th January, 1888. The land sued for was within the congressional grant of lands to Alabama in aid of certain railroads, and was acquired by the Selma, Rome & Dalton Railroad Company under the provisions of the said grant and the subsequent statutory provisions effectuating it; and the defendant claimed as a sub-purchaser from said railroad company. The plaintiff claimed as a purchaser from the State, under a deed dated June 28th, 1887, which recited that the State had bought in the land at a sale for unpaid taxes in June, 1881; and he further proved that the land was sold in April, 1876, for unpaid taxes assessed for the years 1874–5 against W. W. Browning, and bid in by the State, and that it was afterwards assessed and sold in like manner in June, 1881. The material question in the case was the validity of these tax proceedings. The court charged the jury to find for the defendant, if they believed the evidence; and this charge, to which the plaintiff excepted, is here assigned as error.

BROTHERS, WILLETT & WILLETT, for appellant.

KNOX & BOWIE, D. C. BLACKWELL, and CALDWELL & JOHNSTON, *contra.*

[Crook v. Anniston City Land Co.]

CLOPTON, J.—The land, to recover which appellant brings the statutory real action, was sold in April, 1876, for the taxes of 1874 and 1875, and bid in for the State. In 1880, the Auditor furnished a description of the land to the assessor of Calhoun county, who re-assessed it for the amount of the State and county taxes for which it was formerly sold, and for the State and county taxes for the year 1879, and the current year, under the authority of "an act relating to land sold for the payment of taxes," approved February 13, 1879.—Acts 1878–9. The land was assessed in 1874, and in 1880, as the property of W. W. Browning; there was no assessment in his name in 1875. The tax-collector having delivered to the judge of probate the book, as required by the statute, showing that the land in controversy, with other lands, had been assessed to Browning, and the amount of the delinquent taxes due thereon, the judge of probate issued a notice to Browning to appear on Monday, the 11th day of April, 1881, and show cause why a decree for the sale of the land should not be made for the payment of the delinquent taxes, costs and charges thereon; which notice was served on him. On the day named in the notice, the judge of probate made a decree that the State had a lien on the land for the amount of State and county taxes due and unpaid, and that it be sold for the payment of the same, costs and charges. Under this decree the land was sold by the tax-collector, June 6, 1881, and purchased by the State. Plaintiff derives his title by purchase from the State under a deed made by the Auditor, June 28, 1887.

It is clearly and distinctly shown that the Selma, Rome & Dalton Railroad Company obtained the land sued for by congressional grant, and sold and conveyed it, in February, 1873, to the Woodstock Iron Company; the deed being recorded in the proper office within six days after its execution. The Woodstock Iron Company thereupon entered into possession, and continued to possess and occupy the land, openly and notoriously, exercising acts of ownership, until 1884, when the company sold and conveyed it to the Anniston Land & Improvement Company, from whom defendant claims by mesne conveyances. Land in section 5, of which the land in controversy is a sub-division, was assessed for taxes in 1874 in the name, and as the property of the Woodstock Iron Company, and also the entire section in 1877, 1878 and 1879; and the north-east quarter, being the land in dispute, in 1880. Browning was never in possession of the land, and never claimed any right or interest therein.

The first question arising is, whether the proceedings for the taxation of the land as the property of Browning, and the proceedings of the Probate Court culminating in the rendition of

a decree for the sale of the land, and the consequent sale by the tax-collector, operated to pass the title out of the Woodstock Iron Company, the true owner.

A legal assessment is the initial step in tax proceedings, and is the foundation of the proceedings in the Probate Court for the condemnation of the land to the payment of delinquent taxes, without which jurisdiction does not attach.—*Driggers v. Cassady*, 71 Ala. 529. When the owner is known, or by proper inquiry or search can be ascertained, the revenue laws require the property to be assessed to him. And under the statutes formerly in force, authorizing tax-collectors to sell without the judgment of a court ascertaining the delinquency and ordering a sale, if land was assessed to "owner unknown," or to a person who had no interest therein, when the owner was known, or, what is tantamount to knowledge, was in actual, open occupation, this was fatal to the assessment, and avoided a sale thereunder.—*Oliver v. Robinson*, 58 Ala. 46 ; Cooley on Tax. 496. The assessment of lands to the owner should be regarded as more imperative under the present statutes. These statutes, upon the delivery by the collector of a book in which he is required to enter each parcel of real estate assessed to any person against whom taxes have been assessed, and the amount of unpaid taxes and charges due by such person, require the judge of probate to issue notice to the owner, his agent or representative, of each parcel of real estate entered in the book, to appear on a day named, and show cause why a decree of sale should not be made. The assessment, as entered in the book delivered by the collector to the judge of probate, is his only means of knowing to whom the notice must be issued.

But appellant's counsel contend, that the assessment in 1880 was made under a special statute enacted for this and like cases, which simply required the assessment of the land by the description furnished by the Auditor ; that the assessment was strictly a proceeding *in rem*, authorized by the State against its own property, recognizing the claim of ownership of no one ; and hence the general law governing assessments is inapplicable, and no provision is made for notice to any person. The proposition is untenable. The act providing no mode of assessment, unless the general law governs, there is no legal mode of assessing the property. Also, the construction contended for renders the act unconstitutional ; for the Constitution prohibits the General Assembly to tax the property of the State. Con. Art. IV, § 52. This construction charges the delinquency upon the State, and places it in the attitude of authorizing its own property to be sold for payment of taxes due from itself

[Crook v. Anniston City Land Co.]

to itself. Also, jurisdiction of both the subject-matter and the person is requisite to support a decree of sale.—*Carlisle v. Watts*, 78 Ala. 486. As the Probate Court can not acquire jurisdiction of the subject-matter, if the land is the property of the State, nor of the State as a party, under the construction insisted on, the decree of sale and the sale would be absolutely void. A construction, from which such consequences follow, is not admissible, when it may be reasonably avoided.

The evidence clearly shows that Browning was never in possession of, and never owned the land in controversy, but did own and was in possession of another sub-division of the same section, when his property was assessed in 1874. From these facts, and the facts above stated, it is manifest that the assessor had accessible and ample means and opportunities of knowing that Browning was not the owner, and of ascertaining who the owner was. His failure to do so is without excuse. "A law which levies a tax, and provides for its assessment, will not justify the collection of the tax until the assessment is first made. To attempt otherwise, would be equivalent to an attempt to execute a law against a person or thing before it had been judicially ascertained and determined that such person or thing was amenable to its provisions. There must be an assessment pursuant to the levy, else there can be no lawful collection of the taxes."—*Perry County v. Railroad Co.*, 58 Ala. 546. The land having been sold in 1876 for the taxes of 1874 and 1875, when, as we have shown, there was no lawful assessment for the first year, and no assessment for the second, that sale is invalid *in toto*, and the State took nothing by its purchase.—*Oliver v. Robinson, supra; Jackson v. King*, 82 Ala. 432; Cooley on Tax. 497.

As to the effect of the sale in 1881, while it is true that the purchaser at a tax sale acquires the fee, when land has been assessed to the owner, or to a person whose duty it is to pay the taxes, and properly sold under valid proceedings and decree; yet, when it is assessed to a person who has no claim or interest, and who does not represent the owner, the decree is *res inter alios acta*, not binding him or his interest, unless properly and legally assessed to "owner unknown." A sale under such proceedings and decree will not operate to divest him of his independent and superior title. Otherwise, the effect would be to take and sell the property of one person under a decree to which he is not a party, rendered on proceedings of which he had no notice, to pay taxes due by another. This would not be "due process of law."—*Abbott v. Lindenbonner*, 42 Mo. 162.

The evidence further shows that the Woodstock Iron Company paid all the taxes assessed against the company from

[Crook v. Anniston City Land Co.]

1874 to 1884, when the land was sold to the Anniston Land & Improvement Company, during which years the land sued for was its property. To allow the tax sale to have the effect, under such circumstances, of depriving the company of the land, would be requiring it to pay the taxes imposed thereon as its property, and also taking the land itself in payment of taxes due by Browning, simply because a mistake, no intentional fraud appearing, as to the numbers of the land in fact owned by Browning, was made in assessing his property, either by himself or the assessor. It has been held that a decree of the Probate Court, ordering the sale of land for taxes, is not conclusive on the owner as to its validity, where the taxes were not due, and that he may defeat an action of ejectment brought by the purchaser at the tax sale, by proving that he had paid the taxes prior to the institution of the proceedings. *Watson v. Kent*, 78 Ala. 602. With more reason may the owner, when the land has been assessed to one who has no claim or interest, defeat such action by proving that it has been assessed to him for the same years, and that he has paid the taxes thereon.

It is true that in 1875, and some other years, the lands of the Woodstock Iron Company were not assessed by their numbers, or other description. In *Watson v. Kent, supra,* the sub-divisions of the lands were not specified, nor other description of them given; yet, the general charge for defendant, given by the trial court, was sustained by this court, on mere evidence that the owner had paid the taxes assessed against him. The evidence shows that in 1874 lands in section 5 were assessed against the company, and the whole of the section in 1877, 1878 and 1879, and the north-east quarter of the same section, the land in dispute, in 1880. The evidence, being uncontroverted, sufficiently shows that the company paid the taxes on the land sued for, for the years for which it was assessed in 1880 to Browning as the owner. The State having acquired no title by the purchase at the tax sale, the Auditor's deed passed none to plaintiff.

Affirmed.