MARY BURKE ET AL., Respondents v. MARY DALY ET. AL., Appellants.

January 2, 1884.

1. PARTITION — ATTORNEYS — FRAUD — BURDEN OF PROOF. — The burden is on a purchaser at partition sale, who was also the plaintiff's attorney in the partition proceeding, to show that the sale was as advantageous as could by due diligence have been made.

2. —— Such a sale will be set aside where, by the negligence of their attorney, the minor defendants were not represented at the sale, where no effort was made to secure bidders, and where the property did not sell for its reasonable value.

APPEAL from the St. Louis Circuit Court, LUBKE, J. *Reversed and remanded.*

GARESCHÉ & HOBEIN, for the appellants: It is necessary to the validity of partition sales, that there should be the utmost good faith on the part of all persons concerned. — *Goode* v. *Crow,* 51 Mo. 241 ; *Stoffel* v. *Schroeder,* 62 Mo. 149 ; *Thornton* v. *Irwin,* 43 Mo. 163 ; *Grumley* v. *Webb,* 44 Mo. 448 ; *Rea* v. *Copelin,* 47 Mo. 82.

J. P. VASTINE, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an appeal from an order of court affirming the report of sale of a commissioner in a proceeding in partition.

The parties to the partition suit were Mary Burke, who with her husband were plaintiffs, and the four minor children of Mary Burke, who were defendants. The decree found Mrs. Burke and her children entitled each to an undivided fifth of the property, and ordered it to be sold as insusceptible of division. The terms of sale were one-half cash, the balance in one year, with the privilege of paying all cash at a discount of two per cent. James S. Farrar

was appointed special commissioner to make the sale. Joseph P. Vastine was attorney for plaintiffs, and Alexander J. P. Garesché, guardian ad litem of the minor defendants. The decree further ordered that, as Vastine had paid $397.10 to redeem the property from unpaid taxes, this be taxed as costs in favor of Vastine.

The property was sold at the court-house door, at public outcry, to the highest bidder.

Lot 22 of Schaumberg's subdivision, fronting twenty-five feet on Benton Street, was sold to Patrick Burke, trustee of plaintiff, for $1,225.

Lot 6 of Ridway's Addition fronting twenty-five feet on Filmore Avenue, was sold to Vastine at $13 a foot, or $325 for the whole.

Lots 6 and 7 of block 6 of Page's Addition, fronting fifty feet on California Avenue, were sold to Vastine at $6 a foot, or $300 for the whole.

After testimony had been heard on the exceptions to the report of sale, it was stipulated that the bid as to the Benton Street property be increased to $1,500, and that as to the Filmore Avenue property to $362.50, and that the exceptions be withdrawn as to those lots.

Exceptions were filed by Garesché, as attorney of defendant, Mary Daly, and guardian ad litem of the other defendants. The grounds of exception were, that the commissioner was not sworn; that due notice of the sale was not given, and that the property was sold at prices greatly below its true value; counsel for plaintiffs being purchaser of a portion, and plaintiff's husband the purchaser of the rest of the property.

On the hearing, the only witnesses examined as to the California Avenue property were Greffert and Reed — Greffert on behalf of plaintiffs, testified that he bid $6 a foot for the California Avenue property, and that it was fairly worth only $8 a foot; that he was a real estate agent of many years' experience, and owned prop-

erty in the neighborhood, and that he remembered no bidders but Vastine and himself. Reed testified that the California Avenue property was below grade in the rear, and fairly worth not to exceed $7 a foot, and it would be difficult to sell at that price. He was not cross-examined. An attachment was out for Joseph T. Donovan, who had been summoned for defendants, the exceptors. As he was not brought in at the close of the testimony in support of the sale, the trial judge said that he would sit until late in the evening to await the arrival of the witness, as he was advised that he could easily be found. Counsel for exceptors said that it was impossible for him to remain in court, and the matter was then taken under advisement, and the exceptions were overruled and the report of sale confirmed. The defendants then moved to set aside the affirmance of the report of sales on the the grounds alleged in the former motion. In support of this motion, affidavits of Alexander J. P. Garesché and of Joseph T. Donovan were filed. These affidavits were lost. The original papers in the case were mislaid pending the former motion. All this caused great delay. A year had elapsed from the report of sale when the trial court notified the parties that it would hear oral testimony on the motion to set aside the affirmance.

Garesché testified that defendant, Mary Daly, was now of age ; that he was acting in the matter purely from charity ; that the sheriff, in advertising such sales, always allows a day additional for every intervening Sunday; that had the commissioner done so in this case, Garesché would have attended the sale; that he learned of the sale, for the first time, and to his dismay, on the afternoon of the sale, or on the next day. Garesché further testified that he knew nothing of the value of the property, but had employed Donovan to examine it. The rest of his direct evidence was as to the loss of the papers, except that he said that, had he known of the sale, he would have taken extra measures to secure bidders

by mailing the advertisements to persons shown by the assessor's books to own adjoining property. This witness stated that he did not know the witness Reed, but had since learned that he was a man whose business was loaning money at usurious rates; and that the witness Greffert was a real estate agent and buyer of tax-titles ; and the witness stated that, in his opinion, such men were not fair judges of the value of real estate.

Joseph T. Donovan testified that he was a real estate agent of twenty years' experience. The California lots were worth $15 a foot. He examined the property for Garesché a year ago. It was then worth a dollar or two less per foot, but it could be sold at the time when witness gave his testimony at $15 a foot.

Vastine and Garesché then testified as to matters in regard to the delay in hearing the motions. Vastine also said that he bid on the property only to save it from sacrifice, and that the mother, and all the defendants except the oldest, desired the sale confirmed.

The court then overruled the motion to set aside the confirmation of the sale.

There is nothing in the point as to the affidavit of the commissioner, and it is not urged here. The objection to the advertisement seems to be equally untenable. The notice was published in twenty issues of a daily paper, the first insertion being on the 9th of June, and the last on the 1st of July. The sale was made on Monday, 3d of July. Full twenty days intervened between the first publication and the day of sale. The omission to publish on the intervening Sundays is immaterial, unless it appears that the paper had a Sunday edition, and this is not pretended. *German Bank* v. *Stumpf*, 73 Mo. 311.

The statute provides (Rev. Stats., sect. 3395) that every special commissioner appointed under the partition act shall be " governed by the same rules applicable to sheriffs in

like cases;" and that the sheriff (sect. 3373) shall "be governed by the same regulations provided by law for sales of real estate under execution, notice being given by the sheriff as provided by law for such sales." The execution law provides that the sheriff shall have "previously given twenty days' notice of the time and place of sale." Sect. 2380. There can be no doubt that an advertisement, otherwise regular, published in a daily paper for twenty successive secular days, gives twenty days' notice of the sale. *German Bank* v. *Stumpf*, 73 Mo. 314; 10 Mo. App. 457. Mr. Garesché swears to a custom of the sheriff of allowing an additional day for every intervening Sunday. If the sheriff does so, he is not bound by law to do so, and such a custom is not a "regulation provided by law," by which the commissioner must govern himself. It appears, however, that the commissioner, in this case, did allow in his notice for every intervening Sunday, since he actually gave, not twenty, but twenty-four, days' notice of the sale. The advertisement, as appears by the affidavit of the printer, was inserted on twenty successive secular days, — that is, on every day from the 9th of June to the 1st of July, both inclusive, except the 11th, 18th, and 25th of June, which seem to have been Sundays. The notice, if we exclude the first day and include the last, according to the rule for computing time in such a case as this, was first inserted twenty-four days before the day of sale, which was the 3d of July, between which day and June 9th there were just four Sundays. Rev. Stats., sect. 3126; *Patchin* v. *Bonsack*, 52 Mo. 431; *Kellogg* v. *Carrico*, 47 Mo. 159. Mr. Garesché says he knew nothing of the sale until the afternoon of the 3d, or perhaps until the next day, which was the 4th, a *dies non.* If he had no time for making his customary examination in the assessor's office, and giving the notice which he testifies that he habitually gives to adjoining property holders in such cases, this is wholly attributable to the fact

that he made no inquiry about the matter until the twenty-fifth or twenty-sixth day after the first appearance of the advertisement.

The property in question was sold at $6 a foot. According to the testimony of plaintiffs' witnesses, it was worth, on the day of sale, from $7 to $8 a foot, or from $50 to a $100 more than it brought. According to the testimony of Donovan, it could have been sold, when he testified, at $15 a foot, having risen in value $2 a foot since the sale. It is not for us to say, therefore, that there was not evidence from which the trier of the fact may have found that the particular two lots now under consideration were not sacrificed, and that they brought something near to their true value.

The only question, therefore, is whether the sale ought to have been set aside on the ground that the purchaser was the attorney for plaintiffs in the partition suit. And we think that on this ground alone, the sale ought to have been set aside. Not that the attorney for plaintiffs in a partition suit is wholly incapacitated from purchasing the subject-matter of the action, but that, from motives of public policy, the courts watch all such sales with jealous scrutiny, and throw upon the attorney the burden of showing that the bargain is as good as could have been obtained, by due diligence, of any other purchaser. This, we think, was not shown. The other pieces, sold at the same time, were sold so much below their value that, to maintain the sale, plaintiffs and their attorneys were compelled to pay largely more than their bids. It does not appear what diligence was used to obtain purchasers, and it is clear that the very lots in dispute, though not shown to have been sacrificed, were. sold for from five-sixths to six-sevenths of what they might have been expected to bring at such a sale. The interests of the minors seem to have been neglected through the confidence of their guardian that the sale could in no case take place before the 5th of July.

Fraud does not appear; and we have no suspicion that this sale was tainted with fraud; but we think that the policy of the law is, that a sale of real estate to an attorney representing parties to the litigation, and who, therefore, may be supposed, to some degree, to control or influence the terms and time of sale, can not be sustained, unless there is clear proof that, with every diligence to procure purchasers, no higher price than that bid could have been reasonably obtained.

We are referred to *Grayson* v. *Weddle* (63 Mo. 523), but the case is not in point, since it was an administrator's sale at which, by statute, the trustee may purchase at two-thirds of the appraised value. On the other hand, what is said by the court in *Thornton* v. *Irwin* (43 Mo. 163), shows the policy of the law, in accordance with which we think this sale ought to be set aside.

The judgment is reversed and the cause remanded. All the judges concur.