[No. 8323. Department One.  December 4, 1909.]

AUGUSTE ROGER *et al.*, *Respondents*, v. JOHN W. WHITHAM *et al.*, *Appellants*.[1]

MUNICIPAL CORPORATIONS — ASSESSMENTS — SALES — PURCHASE BY CITY ATTORNEY—VALIDITY.  A city assessment foreclosure and sale, without notice to the owner, is void when conducted by the city attorney, who made no diligent effort to ascertain the name or address of the owner, and who has, through the instrumentality of a third person, bid in the property at a grossly inadequate price.

SAME.  A city attorney is charged as a trustee, as well for the owner of property sought to be charged with the lien of a special assessment as for the city, and is bound to perform his full duty to each.

JUDICIAL SALES—SETTING ASIDE—INADEQUACY.  Slight attending circumstances indicating unfairness are sufficient to sustain the discretion of the court in setting aside a sale for a great inadequacy of price.

SAME—DEFENSES.  A city attorney cannot bid in property at a public sale conducted by him, and assert equitable defenses against the owner.

ALIENS—EXPATRIATION.  Expatriation does not forfeit the right to hold and recover real property.

EQUITY—LACHES—LIMITATION OF ACTIONS.  Laches will not bar an action to recover real property where suit is brought within the period of the statute of limitations.

Appeal from a judgment of the superior court for King county, Main, J., entered June 30, 1909, upon findings in favor of the plaintiffs, in an action to set aside a foreclosure sale and to quiet title, after a trial on the merits before the court without a jury.  Affirmed.

*Charles R. Crouch*, for appellants.

*Todd, Wilson & Thorgrimson*, for respondents.

CHADWICK, J.—On the 9th day of December, 1902, plaintiffs acquired the fee simple title to lot 33, block 74, Gilman

[1]Reported in 105 Pac. 628.

Park, now a part of the city of Seattle, but at all the times hereinafter mentioned a part of the city of Ballard, in King county. In December, 1902, the city council of the city of Ballard passed an ordinance declaring its intention to construct a sewer on Ballard avenue, and such subsequent proceedings were had that an assessment of $56.90 was levied against the property. The ordinance provided that all assessments should be paid in one payment, and within a limited time, to the treasurer of the city of Ballard. The assessment against lot 33 not having been paid within the time fixed as the date of delinquency, the council directed the city attorney, the defendant John W. Whitham, whom we shall hereafter refer to as defendant or appellant, to bring a suit to foreclose its lien. Service was had by publication, but no copy of the summons or complaint was ever served on plaintiffs, who were at the time, and for several years before that time had been, residing in Paris, France. Judgment was taken, and on the 12th day of November, 1904, the property was bid in by defendant in the name of one E. B. Bodwell, for the sum of $111.32, that being the amount of the assessment, penalties, interest, and costs. Defendant paid out his own money, intending to acquire title to the property. On December 9 following, Bodwell made a deed to defendant without consideration. The general taxes had been paid by plaintiffs up to and including the year 1904.

In April, 1906, plaintiffs forwarded money through their agent, then residing in San Francisco, to pay the 1905 taxes then due, but the money was returned. After a due season of correspondence, plaintiffs learned that the property was claimed by defendant. About this time defendant discovered that the sale had not been confirmed; whereupon he attended to that detail, and had the sheriff execute another deed to Bodwell, who in turn deeded the property to defendant. The property at the time it was first sold was worth $3,000, and is now of increased value. Plaintiffs employed an attorney in the spring of 1907. This action was begun on July 21,

1908, after a tender of $1,000 to cover all taxes and assessments which had been levied upon the property had been refused. There was no suggestion of the lien of the assessment on the county tax rolls. Other pertinent facts will be noticed in our discussion of the law of the case. The trial resulted in a decree in favor of plaintiffs, and defendant has appealed.

Respondents base their claim to reassert title to their property upon two principal grounds; the one, that the assessment was made under the law of 1901, whereas the law of 1891 should have been followed, and for that reason no lien was created; the other, that appellant, in abuse of his trust as city attorney, bought the property at a grossly inadequate price, without exercising due diligence or making such inquiry as might have led to a discovery of the post-office address of respondents, thus insuring notice of the pending suit. The defenses set up are, the validity of the foreclosure proceeding; that respondents are expatriated citizens; that this is a collateral attack upon the judgment; that the action was not begun within the time limited by law, and that respondents have been guilty of laches.

Without discussing the statutes of 1891 and 1901, we think the judgment of the lower court must be sustained upon the second ground urged by respondents. It is the duty of an attorney—and that duty will be laid with heavy hand upon a public officer who becomes a purchaser at a sale conducted by him for the public benefit—to exercise due care, and to pursue such sources of inquiry as are open to him and which may lead to the means of giving notice to the citizen whose property is about to be charged. Appellant cites the rule that any person can purchase at a judicial sale who has no duty to perform in reference thereto inconsistent with the character of a purchaser. But in this case appellant was confronted with a two-fold duty, a duty to the city and a duty to the owner. If the duty is violated, the sale may be avoided at the suit of the party injured.

While it is a primary rule that mere inadequacy of price, unless so gross as to shock the conscience, is not enough to set aside a judicial sale, it is also true that, when there is a great inadequacy, slight circumstances indicating unfairness will be sufficient to justify a decree setting the sale aside. *Ballentyne v. Smith*, 205 U. S. 285, 27 Sup. Ct. 527, 51 L. Ed. 803. It was there said, and even a cursory review of the authorities will bear out the statement, that "each case must stand upon its own peculiar facts." Now it fairly appears, and although disputed in part by appellant, was found to be the fact by the trial court, that the property stood upon the county assessment roll in the name of W. H. Vernon, a former owner, a resident of Ballard or Seattle, and an acquaintance of appellant. Vernon had formerly been the agent of respondents and he knew their address. At the time of foreclosure there was a notation in figures "47128" on the margin of the tax roll which, if inquired into, would have shown a letter thus numbered, preserved as a file by the county treasurer, and containing the name and address of respondent Auguste Roger, as well as the name of his agent in San Francisco who had paid the taxes. It would seem that the tax rolls would be one of the first sources of inquiry in all cases where a public officer is called upon to ascertain the names of the owners of property which he is undertaking to subject to foreclosure to satisfy a claim of the municipality. While an attorney may purchase at a judicial sale, the fact that he was the attorney directing the sale becomes a challenging circumstance to be considered by the court.

"Such purchase by the attorney, if at a greatly inadequate price, should cause vigilant scrutiny into anything which might affect the fairness or unfairness of the sale." The Ruby, 38 Fed. 622.

Such sales are not favored and, with slight attending circumstances, are enough to prompt the discretion of the chancellor.

13—56 WASH.

"The attorney being himself, to some extent, implicated in the management of the sale, must show that it is perfectly fair—that the spirit and true intent of the decree has been complied with, and that due regard has been paid to the interest of all concerned, by making such effort as the circumstances indicate to be fair and reasonable to get the best price that can be procured for the property. And surely if the circumstances demonstrate · that a fair and reasonable effort has not been made to get the best price, and that in consequence of this failure, the attorney has been able to make a great speculation with a corresponding loss to the party on the other side, neither the principles of equity nor that policy which consults the stability of judicial sales, and the confidence which should be reposed in them, requires that the attorney should be confirmed in his speculation, and especially if the disaffirmance of the sale could be attended with no injury, not even the injury of delay to the party to whose benefit the sale is decreed." *Busey v. Hardin*, 2 B. Mon. (Ky.) 407, 410.

See, also, *Burke v. Daley*, 14 Mo. App. 542; *Clute v. Barron*, 2 Mich. 192; *Shroeder v. Young*, 161 U. S. 334, 16 Sup. Ct. 512, 40 L. Ed. 721. And we may add to the quotation, that an equal duty was upon the attorney to locate the owner if possible. A public officer, especially a city attorney, owes the same duty to the citizen that he owes to the municipality. He acts to some extent in the character of a trustee. In this connection we indorse the utterance of the supreme court of Arkansas, in speaking of the right of an attorney for an administrator to purchase at his own sale:

"The doctrine has been extended to all persons entrusted with the management and direction of sales, in such manner as to impose upon them the duty of taking care that the property may be sold to the best advantage for all concerned. They cannot purchase at all, however fair their intentions. As purchasers their interests would conflict with their duties, and the courts of equity, regarding the weakness of ordinary men, takes from them all temptations by rendering them incapable of purchasing at all." *West v. Waddill*, 33 Ark. 575, 587.

And also the case of *Wright v. Walker*, 30 Ark 44, where

the remark of Lord Thurlow, in *Hull v. Hallett*, 1 Cox 134, that: "No attorney can be permitted to buy in things in a course of litigation. of which he has the management. This the policy of justice will not endure," is adopted. Although the English rule in all its strictness has been modified to the extent that an attorney may become the purchaser, his right is not absolute. Its limitations are defined in the case of *Merritt v. Graves*, 52 Wash. 57, 100 Pac. 164. In that case Judge Rudkin traces the line of demarkation at that point where there is no legal or moral duty to protect the interests of the parties concerned. In this case there was both a moral and legal duty upon appellant, a public officer, appointed and directed to make the sale. In such cases all the books agree that the sale can be avoided if he undertakes to enlarge his compensation or fatten the emoluments of his office by speculations nourished in the hope of personal gain. The cases to sustain this proposition are too numerous to be cited here. They are collected in 17 Am. & Eng. Ency. Law, p. 964, and 24 Cyc. 29, to which may be added *Coughlin v. Holmes*, 53 Wash. 692, 102 Pac. 772.

Speaking to the defenses interposed, the complaint and proofs are ample to charge defendant as a trustee; the question of collateral attack thus becomes immaterial. No rule of law has been cited, nor do we know of any, that will forfeit the property of the citizen who for any reason becomes expatriated. The action was begun within the period of limitation, and unless there be some controlling equity, the court will not conjure the doctrine of laches to defeat or destroy a statute fixing a time within which actions may be brought. *Cordiner v. Finch Investment Co.*, 54 Wash. 574, 103 Pac. 829.

The judgment is affirmed.

RUDKIN, C. J., FULLERTON, and GOSE, JJ., concur.

MORRIS, J., took no part.