ARNOLD et al. v. NESS.

(District Court, D. Oregon. March 23, 1914.)

No. 6025.

1. PROCESS (§ 149*)—EVIDENCE AS TO SERVICE—WEIGHT AND SUFFICIENCY.

In an action to cancel a sheriff's deed as a cloud on the title, evidence *held* sufficient to show service of summons on the defendant in the action in which the land was sold under execution.

[Ed. Note.—For other cases, see Process, Cent. Dig. §§ 202–205; Dec. Dig. § 149.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**2. EXECUTION (§ 251*)—SALE—OPENING OR VACATING—FRAUD.**

At an execution sale a tract of timber land divided into four lots and worth at least $3,500 was sold as a whole, though L. O. L. § 238, requires real property consisting of several known lots or parcels to be sold separately or otherwise as is likely to bring the highest price. It was purchased on behalf of the execution creditor's attorney, with money furnished by him, by a person who subsequently deeded it to him, for $142.30, the amount necessary to satisfy the judgment and another judgment, as he had previously ascertained from the sheriff by direction of the attorney. The sheriff's deed was issued 17 months after the sale and not promptly recorded, and the deed from the bidder to the attorney was not recorded. Purchasers from the execution debtor were permitted to pay the taxes for several years without any notice that the attorney claimed to be the owner. *Held*, that there was such fraud on the part of the attorney in not directing the sheriff to sell but one lot and in concealing his identity in the transaction, evincing a purpose to obtain the entire tract for a nominal sum, as justified the setting aside of the sheriff's deed.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 708–716; Dec. Dig. § 251.*]

**3. EXECUTION (§ 228*)—SALE—PERSONS WHO MAY PURCHASE.**

The attorney for execution creditors is not inhibited from purchasing at the sheriff's sale; but, being an officer of the court, when his acts are questioned, he must show that they were fair and bona fide.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 642–647; Dec. Dig. § 228.*]

**4. EXECUTION (§ 251*)—SALE—OPENING OR VACATING—INADEQUACY OF PRICE.**

While inadequacy of price alone does not justify the setting aside of a judicial sale, if it is great or such as to shock the conscience, slight circumstances impeaching the fairness of the transaction will justify setting it aside.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 708–716; Dec. Dig. § 251.*]

**5. EXECUTION (§ 242*)—SALE—CONFIRMATION—CONCLUSIVENESS.**

The statute of Oregon, providing that an order confirming a judicial sale shall be a conclusive determination of the regularity of the proceedings in any other action, suit, or proceeding, does not cover a case of fraud unknown and undiscovered by an execution debtor who had constructive notice only of the sale and confirmation.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 669–672; Dec. Dig. § 242.*]

**6. EXECUTION (§ 242*)—STATUTORY PROVISIONS.**

Laws Or. 1913, p. 752, § 2, providing that all judicial sales of land heretofore made to satisfy judgments shall be valid and sufficient to sustain the sheriff's deed if the money shall have been paid and the sale confirmed by the court, was not intended to cover a case of palpable fraud attending an execution sale.

[Ed. Note.—For other cases, see Execution, Cent. Dig. §§ 669–672; Dec. Dig. § 242.*]

**7. EXECUTION (§ 255*)—SALE—VACATING—CONDITIONS.**

The setting aside of a sheriff's deed at an execution sale as a cloud on the title would be conditioned upon the repayment of the bid and of taxes paid by the purchaser with interest.

[Ed. Note.—For other cases, see Execution, Dec. Dig. § 255.*]

In Equity. Suit by B. F. Arnold and another against S. P. Ness. Decree for complainants.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A. A. Hull, of Chehalis, Wash., H. W. Thompson and C. A. Hardy, both of Eugene, Or., and Reed & Bell, of Portland, Or., for complainants.

G. F. Skipworth and Jay L. Lewis, of Eugene, Or., and Geo. A. Pipes, of Portland, Or., for defendant.

WOLVERTON, District Judge. This is a suit to remove cloud from title to land described as the north half of the north half (being lots 1, 2, 3, and 4) of section 2, township 16 south, range 8 west, W. M.

The complainants deraign their title through John G. Curry from the United States. The defendant claims title through Curry by sheriff's deed to one Peder Ophus, and by deed from Ophus. Curry's patent bears date September 4, 1907, and was recorded in Lane county November 13, 1907; the land being situated in that county.

On May 23, 1905, the defendant, as attorney for Carrie Olson, obtained a judgment in the justice's court, in her favor and against John G. Curry and Eva Curry, his wife, for the sum of $20.20 and costs taxed at $3.90. A transcript of this judgment was certified, filed, and docketed, in the circuit court docket for Lane county, September 5, 1907. In the meantime, to wit, on September 24, 1906, the First National Bank of Eugene City recovered a judgment against J. G. Curry, in the county court in and for Lane county, Or., for the sum of $66.66, with costs and disbursements, and it was further adjudged that the property attached, being the lands in controversy, be sold and the proceeds of sale applied to the payment of such judgment. A writ of execution was issued on the Olson judgment September 6, 1907, and the lands hereinbefore described were sold on October 21, 1907, in one parcel at sheriff's sale to Peder Ophus for the sum of $142.30. An execution having also issued on the First National Bank judgment, the sheriff made return that he applied such proceeds of sale as follows:

| | |
|---|---:|
| To the Olson execution in full | $ 28 15 |
| Printer's fees | 18 90 |
| To the First National Bank execution | 95 25 |
| | $142 30 |

The sale was in due time confirmed by the circuit court, and the sheriff directed to execute a deed to the purchaser. This deed was executed March 23d, and recorded in Lane county records March 31, 1909.

These facts are established by record evidence introduced at the trial. Further testimony was adduced, and but two questions vital to the cause are presented for decision: First, whether the defendant J. G. Curry was served with summons in the Olson case in the justice's court; and, second, whether the sheriff's sale was accompanied with such fraud on the part of Ness as to invalidate the same.

[1] As it relates to the first question, J. G. Curry, defendant in the justice's action, testifies that no service of the summons was ever made upon him. He is unequivocal and very positive about it. On

the other hand, Ness, the defendant herein, who was the attorney for Carrie Olson, testifies that he witnessed the fact of service by the constable upon Curry, and relates that it was made in the anteroom to the Oddfellows Lodge, and that he (Ness) called Curry out of the lodgeroom, knowing the officer to be there, for the very purpose of having him make the service. The return of the constable shows that he received the summons on the 16th day of May, 1905, and on the same date served it upon John G. Curry and his wife, Eva Curry. This is practically all the testimony that was adduced material to the fact of service.

Considering the return of the officer in connection with the testimony of Ness that he saw the summons served, the weight would appear to be in favor of service. This testimony stands against the testimony of Curry denying the fact, and I am satisfied that due service was made as shown by the return of the officer.

[2] As to the sheriff's sale, the defendant Ness testifies that he was not present thereat, but that he directed Ophus to get figures from the sheriff respecting the amount to be bid for the property. This Ophus did, and the property was bid in at the sum of $142.30. It further appears from the testimony of both Ness and Ophus that the property was in reality bid in for Ness, and with money supplied by him. The sheriff's deed was issued more than a year after the sale by five months, and was not promptly recorded. Ophus deeded the property to Ness. This deed is not in evidence, and the date thereof is uncertain; but all this was in pursuance, no doubt, of Ness's plan, first to have the property bid in in the name of Ophus, but for himself, and then to have Ophus deed to him. The Ophus deed has never been placed on file. In the meantime Ness has suffered the present owners of the land to pay the taxes thereon for the years 1908, 1909, and 1910, without notification or warning to them that he himself claimed to be the owner.

At the time the property was sold at sheriff's sale, Ness admits that it was worth $1,500 to $2,000. But it had a much greater value. Curry sold to the plaintiffs in this suit November 5, 1907, being not far from the time that execution was issued, for $5,000, and the property is now worth a sum much in excess of that. I think there can be no question that at the time of the sheriff's sale it was worth from $3,500 to $5,000.

Now, the question arises under this state of facts whether Ness has been guilty of such fraud as that this sale should be vacated, and the deed thereunder declared to be illegal and void.

[3] An attorney is not inhibited from bidding in property at sheriff's sale where he is acting on behalf of the execution creditors; but, being an officer of the court, when his acts are questioned, it becomes incumbent upon him to show that they were fair and bona fide.

[4] It is furthermore a rule that inadequacy of price alone is not sufficient to justify the setting aside of a judicial sale; but it has been held that, where the inadequacy is great or such as to shock the conscience, the court will not be slow to seize upon other circumstances impeaching the fairness of the transaction as a cause for

vacating the sale. Schroeder v. Young, 161 U. S. 334, 337, 16 Sup. Ct. 512, 40 L. Ed. 721. So it was said in the case of Roger v. Whitham, 56 Wash. 190, 193, 105 Pac. 628, 629 (134 Am. St. Rep. 1105, 21 Ann. Cas. 272):

"While it is a primary rule that mere inadequacy of price, unless so gross as to shock the conscience, is not enough to set aside a judicial sale, it is also true that, when there is a great inadequacy, slight circumstances indicating unfairness will be sufficient to justify a decree setting the sale aside."

The statutes of Oregon require that real property, consisting of several known lots or parcels, shall be sold separately or otherwise as is likely to bring the highest price. Section 238, L. O. L.,

The property here in controversy consists of timber land, and was divided into lots and described as such, four of them, each containing about the same area, all probably of about equal value, and each worth from six to nine times more than was bid for the whole at the sheriff's sale, and from 35 to 50 times more than was sufficient to satisfy the writ by virtue of which the sale was made. There is no possible excuse compatible with good conscience and fair dealing for offering the whole of these premises to satisfy so small a claim. Undoubtedly Ness knew what the sheriff was going to do, for he advised Ophus to bid the amount that the sheriff would give him, and the amount given was just sufficient to cover the two judgments with costs and accruing costs. Having control of the writ, Ness could have as readily directed the sheriff to sell but one lot to satisfy the writ, as to have allowed him to sell the whole. Furthermore, the fact that Ness covered his identity in the transaction by having Ophus bid the land in in the latter's name for him, and the failure to record the Ophus deed, evinces a purpose of eventually obtaining this entire tract for the almost nominal sum bid for it. The case is of marked analogy to Taylor Investment Co. v. Deatsman, 64 Or. 384, 130 Pac. 740, recently decided by the Supreme Court of this state. That was a suit to set aside a decree and to annul a sheriff's deed in pursuance of such decree. The execution creditors directed the sheriff not to search for personal property, but to levy the writ in the first instance upon the realty of the judgment debtor. The method pursued was unhesitatingly declared to be a fraud, and it was held that a court of equity would interpose to set aside the sheriff's deed.

[5] It is urged, notwithstanding this condition of the record, that the confirmation of the sale by the circuit court precludes the defendant in the justice's action and those holding under him from further inquiry. The statute provides that:

"An order confirming a sale shall be a conclusive determination of the regularity of the proceedings concerning such sale, as to all persons, in any other action, suit, or proceeding whatever."

And it is under this statute that the defendant bases the contention.

This statute has been many times applied in the courts of the state, but it was not intended to cover a case of fraud unknown and undiscovered by the execution debtor, and it is axiomatic that fraud will vitiate every transaction in which it enters as a material element. It is true that plaintiffs had constructive notice of the sale and con-

firmation, but they had no actual notice thereof, as is shown by the fact of their continuing to pay the taxes upon the premises, and clearly they had no notice of the fraud attending the sheriff's sale.

[6] Reliance is furthermore had upon the curative act of 1913 relating to judicial sales. 1913 Session Laws of Oregon, 752. But I cannot believe that it is the purpose or intendment of this act to cover a case of palpable fraud attending an execution sale.

I am firmly of the opinion that Ness was guilty of such fraud, taking into consideration the very small sum bid for this property, as to warrant a court of equity in setting aside the sheriff's deed under which he now claims. Such deed being a nullity, it follows that the deed of Ophus to Ness must also be set aside, and such will be the order of the court.

[7] It appears further that Ness has paid the taxes on this land for the years 1911 ($27.93) and 1912 ($43.23), and, having paid the sum bid therefor, it would seem to be equitable that the plaintiffs in this action should repay to Ness the amount of such taxes and the amount bid, with interest on such sums at 6 per cent. per annum from date of payment to this time. These deeds will therefore be set aside on condition that plaintiffs make such payment to the defendant, and plaintiffs will recover their costs and disbursements.