CABELL *v*. BOARD OF IMPROVEMENT OF IMPROVEMENT DISTRICT No. 10, OF TEXARKANA.

ROBERTS *v*. BOARD OF IMPROVEMENT OF IMPROVEMENT DISTRICT No. 10, OF TEXARKANA.

### Opinion delivered May 15, 1916.

1. TAX SALES—"UNKNOWN OWNER"—IMPROVEMENT TAXES—FRAUD ON COURT.—A sale of property within a local improvement district, will not be set aside on the grounds of fraud practiced in procuring the sale, where it was set out in the petition for sale that the property belonged to "unknown owners," where in fact the property was in the possession of tenants of the owners, whose ownership could have been ascertained.

2. JUDGMENTS—FRAUD IN PROCUREMENT.—A judgment will be set aside for fraud only when fraud was practiced on the court in the procurement of the judgment.

3. TAX SALES—LOCAL ASSESSMENTS—PURCHASE BY ATTORNEY FOR COMMISSIONERS—VALIDITY.—A purchase by an attorney of the commissioners of a local improvement district, of land sold for the non-payment of an assessment, is invalid and will be set aside.

Appeal from Miller Chancery Court; *James D. Shaver,* Chancellor; reversed.

STATEMENT BY THE COURT.

The issues involved in the appeal in each of these cases is the same and on that account one opinion may serve in both cases. Each case was begun in the chancery court by the owner of property in an improvement district in the city of Texarkana, Arkansas, to set aside the statutory foreclosure sale made by the board of com-

missioners of the improvement district and to quiet their title.   The material facts are as follows:

In 1911, Improvement District No. 10 was created out of part of the city of Texarkana, Arkansas, for the purpose of laying and maintaining a sewer system.   Texarkana is a city lying partly in the States of Arkansas and Texas.   At the time the improvement district in question was organized, J. B. Cabell was the owner of a lot which had on it two frame buildings, one a dwelling house and the other a store building.   At the time of the creation of the district and since that time, Cabell has resided at New Boston, Bowie County, Texas, where he is principal of the colored schools.   Cabell had a deed to his property, which was duly recorded on February 18, 1911, before the improvement district was created.

At the time the improvement district was organized, Mary J. Roberts and her sister, Mrs. E. A. Blankenship, owned two lots within the boundaries of the improvement district, on which was situated tenement houses.   Miss Roberts, her sister and brother, John P. Roberts, moved to the city of Texarkana, Texas, many years before the improvement district in question was organized.   With their joint means they purchased the property, the title to which was taken in the name of their brother.   They had a written agreement by which the property went to the sisters after the death of the brother.   The brother died before the creation of the improvement district. After the creation of the improvement district the commissioners thereof instituted a suit under sections 5691-96 of Kirby's Digest, against W. G. Cook and certain unknown owners to collect the assessments, penalties, and costs, which it was alleged the property owners had not paid within the time required by law.   The property of Miss Roberts and her sister and of Cabell was included in the suit as that of unknown owners.   A sale was had under the foreclosure suit and the property was bid in by one of the attorneys for the improvement dis-

trict commissioners, who had brought the suit and had had charge of the subsequent proceedings thereunder.

A decree was rendered in the suit on April 3, 1912, and all the property was sold under the decree on June 15, 1912, each piece for the taxes, penalties and costs assessed against it. This amounted to $19.60 on the property of Cabell, and his property was worth $2,000. The property of Miss Roberts and her sister was sold for $13.70, being the taxes, penalties and costs. The property was worth $1,500. Miss Roberts and her sister exhibited tax receipts showing that they had paid the State and county taxes on the property in 1909, 1910, 1911, 1912, 1913 and 1914, in the name of J. P. Roberts. Miss Roberts went to the court house on April 5, 1915, to pay the 1914 taxes on the lots in controversy and was informed by the collector that the taxes had been paid on the lots by one of the attorneys of the improvement district commissioners. This was the first time that either of the sisters had knowledge of the organization of Improvement District No. 10 of Texarkana, Arkansas, or of the suit to collect the delinquent taxes. There were three houses on one lot and one on the other, which had been there for twelve or fourteen years. During the years 1911 and 1912 and since that time, negro tenants have been living in these houses. It was shown on the part of appellees that a copy of the summons in the foreclosure cases was affixed to one of the houses on the property in controversy, but the tenants testified that no such notice was posted there. Neither Miss Roberts nor her sister saw the notices posted there.

Cabell admitted that he knew that the district had been organized and supposed that he would be assessed to pay for the improvement, but said that he also thought that notice would be given him to pay his assessment and that no notice was ever given him. He further stated that he had no knowledge that suit had been brought against his property to collect unpaid assessments. He did not know that his property had been sold until he was

served in April, 1915, with summons in an action of eject-
ment brought against him to recover the property. He
had been in possession of his property through his ten-
ants since he had purchased the property, which was
before the district was organized.

The attorney for the board of improvement com-
missioners testified, that he did not purchase the property
until he had sought advice of the chancellor, and the
chancellor told him that he had a right to purchase it.
There were no other bidders at the sale and, as before
stated, the attorney purchased each piece of property
for the penalties and costs assessed against it.

Miss Roberts and her sister offered to pay the pur-
chaser at the sale the sum of taxes, penalties, and costs
that he had paid on the lands and all other sums that he
was out thereon with lawful interest, and offered to pay
that amount into the registry of the court without delay
if appellee would state the amount. The prayer of their
complaint was that the decree, deed and other proceed-
ings under the foreclosure suit be held null and void and
that they have a decree setting aside the same upon the
payment of the sum aforesaid.

Cabell instituted an action in the chancery court to
vacate the decree rendered in the foreclosure proceed-
ings and to set aside the sale. He also filed an answer in
the ejectment suit and asked that it be transferred to
equity and this was done without objection and the two
causes were consolidated.

The chancellor found the issues against the appel-
lants in each case and was of the opinion that the sale
under the foreclosure proceedings in each case was valid.
A decree in accordance with his findings was entered in
each case, and to reverse that decree, appellants in each
case have prosecuted an appeal.

*Webber & Webber,* for appellant.

1.   The owner, if known, shall be made a defendant.
Kirby's Digest, § 5694.   Appellant was the owner; the
record title was in him and he was in actual possession.

It was a fraud to proceed against his property as an unknown owner, and the sale should be set aside as void. 68 S. W. 329, 332; 115 *Id.* 888; 119 *Id.* 879; 127 *Id.* 164. The owner was known and a failure to make him a party was jurisdictional and he is not bound by the decree. 177 S. W. 10 should be overruled. 119 S. W. 880; 63 Ark. 323; 115 S. W. 888; 86 *Id.* 781. The facts of this case bring the owner within the terms of subd. 7, of section 4431, Kirby's Digest. 63 Ark. 323; Kirby's Digest, § 4431.

2. It was error to sell the whole property. Kirby's Digest, § 5700.

3. No member of the board could purchase at the sale. Simms was the attorney of the board and it was unlawful for him to purchase. 33 Ark. 575; *Ib.* 94; 34 *Id.* 582; 86 *Id.* 368; 90 *Id.* 500; 8 Ohio 552; 1 Cox 134. The foreclosure sale should be vacated.

*John N. Cook, Amicus curiae.*

1. Possession is notice of ownership to the world. 33 Ark. 464; 76 *Id.* 25; 82 *Id.* 455; 90 *Id.* 149; 101 *Id.* 163; 107 *Id.* 320. The sale was void.

2. It was error to sell the whole of the lot. Kirby's Digest, § 5700. Simms was the attorney for the board and could not purchase. He was also an officer of court. Kirby's Digest, § 444. The sale should be set aside.

*Paul J. Cella* and *James D. Head,* for appellee.

1. This is a collateral attack on the decree. 177 S. W. 10; 23 Cyc. 1063. The court had jurisdiction and the judgment is conclusive. 94 Ark. 588; 108 N. W. 356; 90 Ark. 166; 181 S. W. 303.

2. The court had jurisdiction. The decree recites that the owners were unknown. Kirby's Digest, § § 5694, 5696; 118 Ark. 449. The proceeding was *in rem* and conclusive. 60 Ark. 369; 88 Mo. App. 553; 127 S. W. 164; Act 71, Acts 1895; 74 Ark. 174.

3. The complaint is defective and the proof insufficient to vacate the decree. Kirby's Digest, § 4431, *et*

*seq.;* 33 Ark. 788; 50 *Id. State* v. *Gill,* p. 458; 84 Ark. 527; 94 *Id.* 347; 72 *Id.* 101; 52 *Id.* 80; 102 *Id.* 252; 89 *Id.* 163; 83 *Id.* 21; 54 *Id.* 541; 57 *Id.* 423; 56 *Id.* 544, 559. This case is ruled by 177 S. W. 10.

4.   The purchase by the attorney was valid. 146 S. W. 1117; 23 Ark. 622; 30 *Id.* 44; 33 *Id.* 575; 54 *Id.* 627; 49 *Id.* 242; 38 *Id.* 1; 36 *Id.* 383; 39 *Id.* 196; 145 U. S. 349; 146 Fed. 929; 20 Ark. 583; 22 *Id.* 143; 4 Cyc. 958-9; 24 Cyc. 29.

HART, J., (after stating the facts).   It is contended by counsel for appellants that the decree was procured by fraud because the complaint in the statutory proceeding to collect the delinquent assessments alleged that the owners of the lots in controversy were unknown when it was well known to the commissioners that appellants were the owners of the lots.   This contention was settled adversely to appellants in the case of *Cassady* v *Norris,* 118 Ark. 449, 177 S. W. 10.   There Cassady, who was a non-resident of the State of Arkansas, owned property in Mena, Arkansas.   His property was placed in an improvement district but he had no knowledge of that fact and on that account did not pay any assessments against it.   A complaint was filed against the unknown owners of lots on which the special assessments had not been paid.   Cassady's lot was included in the complaint and the same was proceeded against as the land of an unknown owner.   It was sold and Norris became the purchaser of it.   He waited until the time for redemption had expired before notifying Cassady of his purchase. In this case the facts are in all essential respects the same, and have been stated and need not be repeated. In regard to a precisely similar contention in the case of *Cassady* v. *Norris,* the court said:

"But these allegations were not sufficient to constitute a fraud practiced by the successful party in obtaining the judgment.   The allegation in the complaint, in the suit to condemn, that the owner was unknown was sufficient to give the court jurisdiction to proceed against

the property. It was not a fraud on the court to make this allegation, although it was untrue; for the court had the power to inquire into its jurisdiction and to determine whether or not it was true. The recitals of the decree condemning the lot in controversy to be sold were, in effect, that the owners of the lots were designated as unknown, and that they were unknown to the board of improvement. We must presume, in the face of these allegations, that the court did make inquiry as to its jurisdiction to proceed against the property, and found that it had jurisdiction. In other words, that the complaint alleged that the owners of the lots were unknown, and that such was the fact.''

(1)    The court held that, since a decree of sale of real estate for non-payment of taxes may be impeached for fraud only where such fraud is extrinsic of the matter tried in the cause, such decree may not be set aside because the owner of the lot was proceeded against as an unknown owner, when in fact he was known to the plaintiff.

Counsel for appellants have asked us to overrule *Cassady* v. *Norris,* upon the authority of the following cases from the State of Texas: *Hollywood* v. *Wellhausen,* 68 S. W. 329; *Sellers* v. *Simpson,* 115 S. W. 888; *Wren* v. *Scales,* 119 S. W. 879 (affirmed by the Supreme Court), and opinion reported in 127 S. W. 164. In *Hollywood* v. *Wallhausen,* the court avoided the sale where the owner was sued as an ''unknown owner,'' saying:

''   *   *   *   Appellants were in possession of the land when the suit for taxes was instituted, and had been for ten years; and the State of Texas was charged with knowledge of such possession, and the officers representing the State had no basis for the affidavit that the owner was unknown. If no one had been in possession of the land, the judgment against the unknown owner might bind the owner, but we can not subscribe to the doctrine that a man in possession of his homestead can be deprived of his title by a suit against an unknown

owner.  If the rule should prevail that a man occupying
a homestead can be dispossessed of the same through a
suit against an unknown owner, of which he had no actual
notice, no citizen could feel secure in the title to his
property.''

These decisions were not before us when we decided
the case of *Cassady* v. *Norris,* but the principles decided
in them were fully considered and discussed by the court
in that case.  The majority of the court think that the
principles decided in *Cassady* v. *Norris* are sound and
adhere to the opinion for the reasons expressed therein.
It is not necessary to repeat the reasoning of the court
here.  Mr. Justice SMITH and myself thought the opinion
in *Cassady* v. *Norris* was unsound at the time it was
written, and dissented.  We have not changed our opin-
ion and, because we did not express in writing our dis-
sent in that case, it may not be amiss if we should briefly
express our views here.

The principles governing the sale of land for taxes
are clearly stated in Cooley on Taxation, volume 2, 3d.
ed., page 912, as follows: ''Tax sales are made ex-
clusively under a statutory power.  The officer who
makes them, sells something he does not own, and which
he can have no authority to sell, except as he is made the
agent of the law for the purpose.  But he is made such
agent only by certain steps which are to precede his ac-
tion, and which, under the law, are conditions to his au-
thority.  If these fail, the power is never created.  If
one of them fails, it is as fatal as if all failed.  Defects
in the conditions to a statutory authority can not be aided
by the courts; if they have not been observed, the courts
can not dispense with them, and thus bring into existence
a power which the statute only permits when the condi-
tions have been fully complied with.  Neither, as a gen-
eral rule, can the courts aid the defective execution of a
statutory power; they may do this when the power has
been created by the owner himself, and when such action
would presumptively be in furtherance of his purpose

in creating it; but a statutory power must be executed according to the statutory directions; and, presumptively, any other execution is opposed to the legislative will, instead of in furtherance of it. It is, therefore, accepted as an axiom when tax sales are under consideration, that a fundamental condition to their validity is that there should have been a substantial compliance with the law, in all the proceedings of which the sale was the culmination. This would be the general rule in all cases in which a man is to be divested of his freehold by adversary proceedings; special reasons make it peculiarly applicable to the case of tax sales."

Our statutes on improvement districts provide that the board may file a complaint in equity for the sale of delinquent property for the payment of assessments, penalties, and costs of suit. The statute provides that such suits may be brought against one or more owners; it provides that the owner of the property assessed shall be made a defendant, if known; if he is not known, that fact shall be stated in the complaint, and the suit shall proceed as a proceeding *in rem* against the property assessed. Kirby's Digest, § § 5691-96. This court has repeatedly held that possession or occupation is sufficient to put on inquiry every person seeking an adversary interest in the property and is, therefore, constructive notice of such title as the possessor or occupant has. *Hamilton* v. *Fowlkes,* 16 Ark. 340; *Hughes Bros.* v. *Redus,* 90 Ark. 149, and cases cited. The ordinance creating an improvement district definitely defines its boundaries. It is usually only a part of a city or town. So when the owner or his tenant is in the actual possession of the property, the board of commissioners and its attorneys are without excuse in stating that the owner is not known. In the State of Alabama there is a statute requiring the assessor to make out a complete list of all the land in his county subject to taxation and set opposite each division or subdivision of section, the name of the reputed owner thereof; and when the owner is not known, these words,

"owner unknown." In the case of *Oliver* v. *Robinson,* 58 Ala. 46, the court said: "It is manifest that proper inquiry and search were not made, to ascertain who was the owner of these lands. Lands can not be lawfully assessed to 'owner unknown,' when the owner is known; and if the assessor or collector, who makes assessments, has, at the time, the means of ascertaining who the owner is—such as open possession by the owner—this is equivalent to actual knowledge, and will avoid a sale made under such assessment."

(2) Even if it be held that this is a collateral attack and that every question that could have been determined in the foreclosure case is presumed to have been determined in the former judgment, and has become *res adjudicata,* still we think the conclusion of the majority of the court is wrong. Section 4431 of Kirby's Digest provides that the court in which a judgment has been rendered shall have power after the expiration of the term, to vacate it, among other things, for fraud practiced by the successful party in obtaining the judgment. It is true we have repeatedly held that the fraud which entitles a party to impeach a judgment must not consist of any false or fraudulent act or testimony, the truth of which was or might have been in issue in the proceeding before the court which resulted in the judgment that is thus assailed; but that it must be a fraud practiced upon the court in the procurement of the judgment. *Bank of Pine Bluff* v. *Levi,* 90 Ark. 166, and cases cited.

In the application of this rule in the case of *Moore* v. *Price,* 101 Ark. 142, the court held that where the sheriff made a false return of service, and a decree was had on such return, reciting service, the record and return may be impeached on the petition to set aside the decree for want of service and notice. So, too, in *Corney* v. *Corney,* 79 Ark. 289, a decree of divorce was set aside. Under our statutes suits for divorce must be brought in the county where the plaintiff resides. In that case the

plaintiff, for the purpose of procuring the issuance of a warning order, made affidavit that his wife was not a resident of the State of Arkansas, when he knew that she was in the State, and he fraudulently induced her to leave the State immediately thereafter, without disclosing his purpose of suing for a divorce. The court vacated the decree on the ground of fraud in its procurement. In the present case, the known owner is entitled to his day in court and to be heard in defense of his rights. The owners were in possession of their lands by their tenants and under such circumstances for the commissioners or their attorneys to state in the complaint that the owners were unknown was to practice a fraud upon the court in the very act of obtaining the judgment itself. Their conduct deceived or misled the court as to a material fact and constituted an abuse of the process of the court which resulted in the rendition of a judgment which would not have been given if the conduct of the whole of the case had been fair.

As we have already stated, however, the majority of the court is of the opinion that the decision in *Cassady* v. *Norris* is sound and adhere to it, both on that account and because it has become a rule of property. Therefore, the decision in that case has become the settled law of this State.

(3)   It is earnestly insisted by counsel for appellants that the sale should be set aside because the attorneys for the board of commissioners bid the property in at the sale. In this contention a majority of the court agree with counsel. In the case of *Roger* v. *Whitham*, 56 Wash. 190, 105 Pac. 628, 21 A. & E. Ann. Cas. 272, the Supreme Court of the State of Washington, in discussing a similar principle, held: "A city attorney who becomes a purchaser at a foreclosure sale for the non-payment of a special assessment owes to the city and to the owner of the property a duty to exercise due care in locating the owner and to pursue such sources of inquiry as are open to him leading to the means of giving notice to the owner,

and where the city attorney violates this duty the sale may be avoided at the suit of the injured party."

There, as here, counsel sought to uphold the sale upon the well known rule that any person can purchase at a judicial sale who has no duty to perform in reference thereto inconsistent with the character of a purchaser. The court held, however, that in that case the attorney was confronted with a two-fold duty, with a duty to the city and a duty to the owner. The court indorsed the utterance of this court in speaking of the right of an attorney for an administrator to purchase at his own sale. In *West* v. *Waddill*, 33 Ark. 575, the court said:

"The doctrine has been extended to all persons intrusted with the management and direction of sales, in such manner as to impose upon them the duty of taking care that the property may be sold to the best advantage for all concerned. They can not purchase at all, however fair their intentions. As purchasers their interests would conflict with their duties, and the courts of equity regarding the weakness of ordinary men, takes from them all temptations by rendering them incapable of purchasing at all."

We think the principles announced in that case apply with equal force here. In *Fitzgerald* v. *Walker*, 55 Ark. 148, in discussing the power of improvement districts, the court said that its powers are derived directly from the legislature and in exercising them the board acts as the agent of the property owners whose interests are affected by the duties it performs. In *Davis* v. *Gaines*, 48 Ark. 370, the court said, that the board is a distinct agency for accomplishing the purposes of the statute. It is true that in foreclosure suits to collect delinquent assessments, the actual sale is made by a commissioner appointed by the court for that purpose; but it by no means follows that the board of commissioners and its attorney have no duties to perform relating thereto. As we have already seen, section 5694 provides that the owner of the property assessed shall be made a defendant if known,

if he is not known, that fact shall be stated in the complaint, and the suit shall proceed as a proceeding *in rem* against the property assessed. The property owner is entitled to his day in court. The duty then devolves upon the board and its attorney to ascertain who owns the property. Under the decision of the majority of the court the question of whether the owner of the property is known becomes *res adjudicata* when it has been passed upon by the chancellor in the foreclosure sale. The act requires that the owner be made a party if known and if he is not known, that fact shall be stated in the complaint. So the act imposes a very delicate and very important duty upon the board and its officers. The means of effectuating a wrongful purpose are very simple and would readily suggest themselves to any one who desired to profit thereby. At least the board would be exposed to the temptation of a dereliction of duty in order that its members and attorney might earn a profit by purchasing at the sale. Hence, it will be seen that a very important trust has been imposed upon the board by the Legislature in the accomplishment of the purposes of the statute. Hardly any public agency exists which possesses to an equal extent the power of wrong-doing. It is true no wrong motive or intentional wrong-doing can be imputed to the purchasers in the present case because they asked the chancellor if it would be proper for them to purchase at the sale, and received his assent thereto before they became purchasers.

The policy of the law, however, must be preserved in all cases in order to effectuate its beneficial purposes. As said in *Clute* v. *Barron*, 2 Mich. 192, "This object can be best effected by declaring their incapacity to become purchasers at tax sales; and by treating as void any purchase made by them, or by any person for them; or, in the language of Mr. Justice STORY, to treat all such sales as if there had been no sale, and the ownership of the property as never having been legally divested. This is

the only remedy for the mischief; this is striking at the root of the evil.''

It is true this language was used in regard to a sale under the statute by the county treasurer for the non-payment of taxes, but if we are correct in holding that the statute contemplates that the board and its attorneys have duties to perform relative to the sale, the language quoted applies with equal force here.

Therefore, the decree in this case will be reversed and the cause remanded with directions to the chancellor to render a decree in accordance with the prayer of the complaint, and not inconsistent with this opinion.

McCULLOCH, C. J., dissenting. The question of the right of an attorney to purchase at a judicial sale as against the interests of his clients must not be confused with the question involved on this appeal. It is too well settled for further controversy, that an attorney owes the highest duty to his client, and can not, as against the interests of his client, purchase at a judicial sale in which his client is interested. In the present case the client of the attorney who purchased does not complain, and we have only the question of the right of the adversary to object to the sale on account of the purchase by the attorney who represented the plaintiff in the foreclosure proceedings.

The writer asserts with the utmost confidence that no case can be found sustaining the views of the majority except the one case of *Rogers* v. *Whitman,* decided by the Supreme Court of Washington. That decision is entirely without harmony with the settled principles which should control, and it should not be followed. The opinion in the case cites a number of cases which did not in the slightest degree support it. Among others it cites decisions of this court which merely hold that the attorney of a party who has a duty to discharge with respect to a judicial sale can not become the purchaser. There is another case cited as sustaining this view (*Busey* v. *Hardin,* 2 B. Munroe, Kentucky, 407), but an examina-

tion of the opinion in that case shows that it has little bearing upon the question no w before us, or which was before the Washington court. In that case there had been a judicial sale, at which the solicitor for the plaintiff purchased the property, and there was an objection to confirmation on numerous grounds, among others that the price at which the property was sold was grossly inadequate. The objection was made by the original owner, who tendered to the purchaser the amount of his bid, which was sufficient to discharge the lien against the property, and the court decided that in consideration of all the circumstances, the inadequacy of the price, the conduct of the solicitor, and other circumstances pertaining to the sale, that confirmation should be denied.

All that was said in the opinion in that case which appears to sustain the view of the majority, is that the fact that the purchase was made by the attorney, has been, in some quarters, deemed sufficient to vitiate a sale as being "against the policy of justice." The learned court doubtless had in mind the English and Canadian rule, which is that an attorney for either party may not purchase without permission of the court. That rule has, however, never obtained in this court, or in any other of the American courts.

"In the United States the rule is that property offered at judicial sale may be purchased by either party to the suit in which such sale was ordered, or by the attorney for either party. But in England and Canada there are numerous cases holding that neither the parties nor their attorneys can become purchasers without having previously obtained permission of the court to bid at such sale. This rule is, however, probably due to the fact that at one time it was customary to give the conduct of the sale to one of the parties, or to his attorney, in which case it would be eminently improper for one person to combine the two characters of buyer and seller." 17 Am. & Eng. Ency. of Law 963.

The rule stated above is the one that is recognized in all of the American decisions with regard to judicial sales under foreclosure of lien. All of the authorities are to the effect that where the sale is made by order of the court, the lienor or his attorney may purchase. 1 Wiltsie on Mortgage Foreclosure, sections 609-610; Freeman on Void Judicial Sales, section 33.

The test as to the right of a litigant or attorney to purchase at a judicial sale is whether or not he has any duty to discharge with respect to the sale itself. Now, the statutes of this State may be examined without finding the slightest imposition of a duty upon an attorney for an improvement district concerning the sale of the property upon foreclosure of the lien for assessment. The proceedings are like other chancery proceedings *in rem,* and the court ordering a foreclosure appoints a commissioner to make the sale. The attorney has no duty to discharge with respect thereto. Whatever may be the duty of the attorney in instituting the action for the improvement district, the proceeding is an adversary one and the attorney does not act in any fiduciary capacity towards the defendants in the proceedings, who are like other persons that are sued and must look after their own interests.

In addition to that, it affirmatively appears that the permission of the court for the purchase to be made by the attorney was obtained, and when these facts were brought to the attention of the court the sale was confirmed. The loss by appellants of their property works a hardship on them, but it resulted from their own failure to pay the assessments and I am unwilling to wreck the settled principles of law for the purpose of protecting them.

Mr. Justice KIRBY concurs in the views here expressed.