[No. 10000. Department One. October 7, 1912.]

WILLIAM MILLER et al., Respondents, v. W. F. WINSLOW
et al., Appellants.[1]

JUDICIAL SALES—SALE TO OFFICER—VALIDITY—CONFIRMATION OF
SALE—EFFECT. An execution sale by a sheriff to himself is such a
fraud on the rights of the owner as to be voidable if challenged with-
in a reasonable time by a suit to redeem the property, notwith-
standing the confirmation of the sale, which only cures irregularities
that go to the record, and does not bar a suit by one who was de-
frauded.

JUDICIAL SALES—VALIDITY—SALE TO OFFICER—FRAUD—INADE-
QUACY OF PRICE. Where an execution sale by a sheriff to himself
deters another purchaser from bidding, the sale operated as a di-
rect fraud upon the owner, especially where there was a great in-
adequacy of price; and it is immaterial that the sheriff finally al-
lowed the property to go to the other bidder.

JUDICIAL SALES—ILLEGAL SALE—REDEMPTION—RIGHTS OF PUR-
CHASER—INTEREST ON TAXES PAID—RATE. Upon redemption from an
illegal execution sale, the purchaser is not entitled to fifteen per
cent interest upon taxes and assessments paid on the property, but
only interest at the legal rate.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered July 5, 1911, in favor of
the plaintiffs, after a trial on the merits before the court,
in an action to quiet title. Affirmed.

*Merrick & Mills*, for appellants.

*Coleman, Fogarty & Anderson*, for respondents.

CROW, J.—This suit was brought to quiet title to four
certain town lots in the city of Everett. The lots were sold
by the sheriff to satisfy a lien for street improvements. The
suit, while denominated an action to quiet title, is in reality
a suit in equity to redeem the property from the defendants,
who claim title under the sale. Many irregularities are
charged, but we find it unnecessary to consider them. They

[1]Reported in 126 Pac. 906.

were probably all cured by the confirmation of the sale. The sale, however, cannot be upheld, for reasons which will presently appear. At the sale, which occurred December, 1909, the sheriff was the highest and best bidder and the property was knocked down to him. An opposing bidder, one Kuster, finding that the sheriff was bidding at the sale, ceased bidding and, immediately after the sale, charged him with being disqualified in virtue of his office to bid at his own sale, and demanded that the property be turned over to him, or in case of his refusal he—Kuster—would carry the matter into court and would also defeat a purchase of other property which the sheriff had bid in over him a few days before. Accordingly, the deputy who conducted the sale was directed to make out a certificate of sale to Clay & Kuster. This was assigned to W. F. Winslow, the father-in-law of Kuster. The present defendants, excepting George M. Buck, who is a mortgagee, are the record owners of the property, defendant Winslow claiming two of the lots, and defendants Doolittle the other two. The Doolittles have not appealed.

In February, 1910, plaintiffs tendered to defendants the amount which they believed to be due and, upon defendant's refusal to accept the amount so tendered, this suit was begun. The four lots were bid in for a nominal sum. The exhibits are not here, but it appears they brought $35 or $40 apiece. The record shows that the lots were worth at the time from $1,500 to $2,000. The only question is, therefore, whether the sale to the sheriff is a mere irregularity which has been cured by confirmation, or is such a fraud upon the rights of the plaintiffs as will avoid the sale. The weight of authority seems to sustain the proposition that a sale to a disqualified person is not, in the absence of a statute, void, but is voidable. We understand the word "void," when used in connection with judicial sales prohibited under a statute, to mean a nullity, or something that cannot be ratified. On the other hand, the word "voidable" used in this connection means that which may be avoided at

the suit of the interested party, but is nevertheless subject to ratification which may be made to appear by showing the lapse of time or the acceptance of benefits. The sale in this case being challenged within a reasonable time and in a proper proceeding, we think the law, as well as sound public policy, demands that the sale be held for naught. It is an ancient rule that the seller holding a trust relation to the thing sold cannot conduct the sale to his own advantage. This principle sustains our decision in the case of *Roger v. Whitham*, 56 Wash. 190, 105 Pac. 628, 134 Am. St. 1105, and has been repeatedly applied when sheriff's sales have been attacked for the reasons here invoked.

"No sheriff . . . shall directly or indirectly purchase any property whatever, at any sale by virtue of such execution; and all purchases made by such sheriff, . . . or for his use, shall be void." Crocker, Sheriffs (3d ed.), § 486.

The rule as stated by Mr. Crocker is taken from the New York code, but the code is only declaratory of the general rule, which with its reasons is well stated in *Perkins v. Thompson*, 3 N. H. 144. The court says:

"It is apprehended, that the soundest policy forbids, that any person should be the purchaser of that which he is appointed to sell. The characters of vendor and purchaser of the same article, at the same time, are inconsistent, and cannot be united in the same person. As sheriff, this defendant was bound by his duty, in relation to the debtor and creditor, to procure the best price he could for the horse; but the moment he employed an agent to bid off the horse for himself, it became his interest to act in direct opposition to his duty. It never can be fit or proper to permit a sheriff to put himself in this situation. It is a situation neither safe to himself, nor to the debtor and creditor. Our statute makes it the duty of coroners to serve all writs and processes, where the sheriff is a party. 1 N. H. Laws 160. This provision is founded upon the manifest impropriety of calling upon, or permitting, the sheriff to act officially in a situation, where his interest might impel him to go counter

to his duty.   If then the law will not permit a sheriff to serve his own writ, even by simply leaving a summons with the defendant, with what consistency can it be decided that a sheriff may be intrusted to sell goods upon an execution, where it is his duty to procure the best price he can, after he has employed an agent to purchase them, and has become interested in having them purchased as cheaply as may be? It is very possible, that a sheriff might sell an article for the full value, and still be himself the purchaser.   But the temptation to act contrary to his duty is so great, he ought not to be permitted to act, where the temptation exists.   Nor is this all.   The sheriff has the means of lessening the price of the articles sold, by determining the time and place of sale favorably to his own views.   And this might be so done, that no human tribunal could detect the fraud.   If it were once decided in this court, that a sheriff might be interested lawfully in the purchase of articles, he himself was selling upon an execution, it would open an avenue to frauds, for the detection of which our courts have very inadequate means.   And it seems to us, that every principle of public policy requires, that we should at once close this avenue forever, by holding, that in no case can a sheriff be interested in the purchase of an article, he is selling as a public officer, and by treating every such purchase as voidable, at the election of the debtor.''

See, also, Kleber, Void Judicial Sales, 363 et seq.; Murfree, Sheriffs, § 1000; 24 Cyc. 29; 17 Am. & Eng. Ency. Law (2d ed.), 999; *Swortzell v. Martin*, 16 Iowa 519; *Goble v. O'Connor*, 43 Neb. 49, 61 N. W. 131.

It is most earnestly contended that the order of confirmation has cured and made valid the sale, if it was irregular or voidable only.   The order of confirmation cures all irregularities, but it goes only to the record, and does not in any way operate to bar a suit to inquire into the sale or its consequences at the instance of one who has been defrauded thereby.   *McKeighan v. Hopkins*, 19 Neb. 33, 26 N. W. 614; *Jackson v. Ludeling*, 21 Wall. 616.   But it is said that no fraud results in this case, inasmuch as the property was taken by Mr. Kuster at the sheriff's bid; that therefore the

property went to the highest bidder, which is all that plaintiffs can demand. It is likely that the property having been struck off to a disqualified person and the sale having been closed, its invalidity could not be cured by a voluntary assignment upon the part of the bidder (such was the legal effect of the sheriff's act), and that the property should have been re-offered in the manner provided by law. Although invited to discuss this phase of the case, we find it unnecessary to do so. We have referred to enough of Mr. Kuster's testimony to show that the sale operated as a direct fraud upon plaintiffs, in that the presence and act of the sheriff operated to produce the very result suggested in the New Hampshire case, a breach of duty; for the record shows that Kuster was not inclined to bid the fair value of the property, but was resolved to take it at the unopposed bid of his adversary. He says:

"When bids were called for, Harry Knowles said—I don't know just what language he used, but he designated how much he would have to have. As I understood, no bid under that would be accepted, and, in each instance, I opened the bidding with the amount he claimed he would have to have. There were several other people standing by and, in each instance, some one else raised my bid. On the first two lots I think there were—Q. Which were the first two? A. Seventeen and eighteen. There were—I don't remember just how many bids, but I think that there were five bids. There was a difference of fifty cents or a dollar a bid, and I made the first and I made the third bid and the fifth bid. I think on the first lot, anyway, there must have been five bids that way. On the next lot there was either three or five. I don't know which, and then J. F. Beard made a bid. I stopped; and it so happened that no one else made a bid and Harry Knowles declared the property sold. On thirty-one and thirty-two I think there were about three bids made. I am quite sure of that as I made the first or opening bid, as I said a minute ago, and I made the third bid and Beard came in and bid again on those, and I quit. Q. Was Beard higher than you? A. He bid higher than I did . . . . A. At the sheriff's office, in the vestibule

or entrance, and I insisted that my bid should be recognized and that I should be declared the buyer of the property. I talked to him presuming that he had authority to tell the deputy whom to make that to and presuming that he, being the highest bidder here at the entrance, would want to have it declared sold to him. I told him that if he did not have that declared sold to me that I would take the matter into court—I would hire an attorney and give him a scrap on it."

The exact question before us has never been discussed by this court, but we said in *Coughlin v. Holmes*, 53 Wash. 692, 102 Pac. 772:

"Furthermore, we are of the opinion that the judgment may be sustained upon the ground that the sale of the land by the county treasurer to himself or a deputy in his office is against public policy, and therefore invalid. *Sponable v. Woodhouse*, 48 Kan. 173, 29 Pac. 394."

It may be further held that, while mere inadequacy of price is not ordinarily sufficient to avoid a judicial sale, yet when that circumstance can be coupled with other facts and these together work a fraud upon the owner of the property, it may operate as a controlling equity. *Roger v. Whitham, supra.* So in this case, the great difference between the true value and the price paid, when coupled with the act of the sheriff, warrants us in holding the sale to be void at the suit of the plaintiffs. The defendants were tendered what plaintiffs conceived to be the amount due to satisfy the lien for street assessments. The tender was refused, but they offer to do equity. Other taxes and expenses may have been met by the defendants since this suit was instituted. We will not, therefore, direct a final judgment, but affirm the holding of the lower court that the sale was void at the instance of the plaintiffs, and remand the case with direction to the trial judge to ascertain the amount of any taxes and charges justly due the defendants, and for which sum they are to have a lien upon the property if the amount is not paid within a time to be fixed in the judgment. *Vietzen v. Otis*, 46 Wash. 402, 90 Pac. 264.

We notice that Mr. Kuster, who was the principal witness on behalf of defendants, when called upon to state the amount due upon the several lots with principal, interest, etc., figured interest at fifteen per cent upon the sum paid to satisfy the lien. This he cannot do. He may recover the legal rate of interest and no more. The rule announced in *Gould v. White,* 62 Wash. 406, 114 Pac. 159, controls. Costs to respondents on this appeal.

GOSE, PARKER, and CHADWICK, JJ., concur.