[No. 16711. Department One. January 20, 1922.]

ALMA DE LA POLE, *Appellant*, v. TROY LINDLEY, *as Executor etc., et al., Respondents.*[1]

LIMITATION OF ACTIONS (56)—FRAUD—DISCOVERY OF FRAUD. Where a mother, as administratrix during the minority of her daughter, makes a sale of real estate in which the daughter has a half interest, to herself through the intervention of a third party, and the daughter does not discover the attempted elimination of her own rights until the death of her mother, some nineteen years later, she is not chargeable with laches nor barred by the statute of limitations from seeking a recovery of her interest in the estate.

EXECUTORS AND ADMINISTRATORS (134)—SALE—VALIDITY—PARTIES ENTITLED TO PURCHASE—ADMINISTRATRIX. An administratrix of an estate stands in a fiduciary relation to those beneficially interested, and whether an unauthorized sale is void or voidable, is not material, where other interests have not intervened, and, irrespective of her own good faith, the administratrix is subject to the rule that a trustee is bound to do that which will best serve the interests which for the time are intrusted to her care.

DESCENT AND DISTRIBUTION (13, 14)—ACTIONS BY HEIRS—RECOVERY OF MESNE PROFITS. A daughter, entitled to one-half of the mesne profits of her father's estate, is not entitled to recover therefor from the estate of her mother, where the income from the property was used indiscriminately for the support and pleasure of mother and daughter, and there is no evidence that the entire income was not mutually spent and consumed for such purpose.

EXECUTORS AND ADMINISTRATORS (149)—ACTIONS BY HEIRS—LIMITATION. Where an heir of one-half of her father's estate joins with her mother, after attaining legal age, in a deed to a tract of land in which she has a half interest, without demanding her share of the purchase price, she cannot, after the bar of the statutory period of limitation, assert a right of action against her mother's estate for her portion of the purchase price appropriated by the mother.

Appeal from a judgment of the superior court for Columbia county, McCroskey, J., entered July 5, 1921, upon findings in favor of the defendants, in an action by an heir to recover an interest in an estate, after a trial on the merits to the court. Reversed.

[1]Reported in 204 Pac. 12.

*S. A. Keenan* and *R. M. Sturdevant,* for appellant.
*Will H. Fouts* and *Roy R. Cahill,* for respondents.

TOLMAN, J.—Appellant was born on March 14, 1883, and when she was three years of age she was legally adopted by John W. Duncan and his wife, Clara A. E. Duncan, who had no children of their own.

The Duncans, during their married life, acquired farm lands aggregating five hundred and fifty-five acres, in Columbia county, upon which they, with their adopted child, made their home. Mr. Duncan died intestate on February 19, 1898. His widow was duly appointed administratrix of his estate, and filed an inventory which covered and described, as community property, all of the real estate above referred to, and personal property which was appraised at $1,328. A few months after her appointment, the administratrix filed a petition, asking to have $500 worth of the personal property set aside as exempt, and for the sale of the remainder to pay the debts of the estate, which were stated to amount to about $3,200. A report filed by her in October, 1899, shows that, from the proceeds of the personal property and the crops raised upon the land, the indebtedness of the estate to outside parties had been reduced to $1,718.25, including a mortgage on the real estate, and that there was due to the widow, $1,665.43, unpaid allowance for family expense, and $1,005 advanced by her to assist in paying a mortgage, which had been discharged, and it is therein stated that, if the time for the closing of the estate be extended for one year, the proceeds of another crop would probably pay all indebtedness, without the necessity of selling any of the real estate.

In April, 1900, the administratrix filed a petition asking that the real estate be sold to pay the debts, which

she then listed at $8,200, more than three-fourths of which were due to herself, and an order was made directing that the real estate, excepting one hundred and sixty-one acres (one hundred and twenty acres of which the widow, after the making of the inventory, seems to have concluded was her separate property), be sold at private sale. A guardian ad litem was appointed for the infant daughter, who consented to the order of sale. The property to be sold was re-appraised at $10,300. Two bids were reported; one from Wright Knapp, who had been a hired man in the employ of the administratrix, and who, so far as appears, was without any means to purchase, and a higher bid from Margaret J. Edmundson for $9,570.50, which bid was accepted, and the sale confirmed by the court, the guardian ad litem consenting thereto.

It now appears clearly and without substantial dispute that the purchaser at this sale, Mrs. Edmundson, was a sister of the administratrix; that she came from her home in Eugene, Oregon, at the request and expense of the administratrix for the sole purpose of rendering her assistance in this matter; signed the bid already prepared for her, and acted for and under the direction of the administratrix throughout; that she paid nothing whatever on the purchase price; executed a mortgage on the land for $2,000, the money thus obtained going directly into the hands of the administratrix and being used by her to discharge the indebtedness of the estate, including a prior mortgage, except only the amounts due to Mrs. Duncan, individually or as administratrix, and within a few months, without ever having gone into possession of the land, or exercised any of the rights of ownership, Mrs. Edmundson deeded all of the land directly to Clara A. E. Duncan, who was still the administratrix, subject to the $2,000

mortgage above mentioned, without receiving any consideration whatever for such conveyance.

In July, 1900, the administratrix filed a final account, showing a balance on hand of a little more than $800 and forty-one acres of land, for distribution between herself and her adopted daughter. On August 11, 1900, this account was approved by the court, and $412.50, and an undivided one-half interest in the forty-one acres of land were distributed to each, and the order further directed that the administratrix be discharged, upon filing vouchers showing such distribution to have been made. No such vouchers were ever filed, and no formal order discharging the administratrix was ever made.

During all this time, and continuing up to the time of Mrs. Duncan's death, the relations between Mrs. Duncan and her adopted daughter were such as may be looked for between an affectionate mother and a dutiful child who are naturally congenial. They lived together at all times, save when the daughter was away at school, even after the daughter's marriage, and except for temporary absences, made their home on the land in question. The mother seems to have assumed to be the directing head and to have managed the farm and transacted all of the business, without explaining details to the daughter or consulting her to any extent. The daughter testified, in effect, that soon after the death of Mr. Duncan, she realized that she had some interest in the ranch, but no one ever explained to her what that interest was, and she never inquired; knew nothing of the community laws of this state, or of the law of descent, and trusted to her mother to protect her interest in all things; that she never even heard of the sale in the probate matter until after her mother's death, and apparently she assumed, at all times, that

her interest in the property remained exactly as it vested in her upon the death of Mr. Duncan.

Appellant brought this action after her mother's death, which occurred in 1919, to recover an undivided one-half of the three hundred and ninty-four acres of land, title to which Mrs. Duncan sought to acquire through the probate proceedings, hereinbefore referred to, asking a judgment for $40,000, the alleged value of the use of her lands wrongfully received by her mother, and further demanding a judgment against her mother's estate for $24,000, alleged to be the value of her one-half interest in the one hundred and sixty-one acres of land not sold in probate, which tract was conveyed to one Broughton, in 1903, for a consideration of $4,-830, received by the mother, but never accounted for by her in any way. From a judgment below denying her any relief, she appeals.

The learned trial court seems to have been influenced largely in arriving at his judgment by the statute of limitations, and the thought that appellant was guilty of laches in not sooner discovering what had been done in the probate of her father's estate, and thereupon promptly and properly asserting her rights. There would be considerable strength in this position had it been shown that the daughter was ever separated from the mother, or had ever been encouraged to look after her own affairs and transact her own business, or had she been in any degree independent of her mother in financial matters. The contrary, however, is established by the evidence, and by every inference to be drawn from the established or admitted facts. All agree that the mother was a forceful person, inclined to dominate and have her own way, and the conclusion seems irresistible that, at the time when she conceived the idea of getting the title to the real property in her

own name, the daughter being but a child in years, was not, in any manner, consulted or informed. We are clear that the mother then had no idea of wronging the daughter, but thought it safer and better for all concerned that she should be in a position to manage, conserve and increase the property in value to the ultimate benefit of the daughter as well as herself, unhampered by the immature judgment of the daughter, or by the uncertainties which the future might develop, not the least of which was the thought that the daughter might marry, and if she did the husband might secure control of her property, to the detriment of all concerned. The daughter's first marriage proved unsuccessful, and when she was obliged to divorce her husband, the mother, no doubt, considered that she had been fully justified, and became, if anything, still less inclined to tell her daughter the true facts, or vest her with title to any part of the property. What she may have thought of the ability of her daughter's second husband to handle and conserve property, we have no means of knowing, except that by her will she gave the daughter a life estate in the lands only, when probably originally she had no thought other than that the entire property would go to the daughter at her death. Nor is there any showing that any information as to the true facts was brought home to the daughter through any outside sources. The attorney who represented the mother in the probate of the father's estate, in his testimony, indicates quite clearly that he did not consider it necessary to inform the daughter of her rights, or of what was being done, but acted quite naturally in assuming that the mother would inform the daughter, or, at least, would not take any steps inimical to the daughter's interest. Nor does it appear that the guardian ad litem ever gave any information to or in any way consulted with his ward.

We hold, therefore, that the relations between the mother and daughter, at all times, were clearly such that the statute of limitations did not begin to run until the discovery of the facts by the daughter, after the mother's death, and, for the same reasons, appellant is not properly chargeable with laches.

Upon the principal question of the effect to be given to the purported sale in probate, little need be said, as the facts speak the law. Whether the sale was void or voidable, it is unnecessary to determine, as there are no intervening purchasers in good faith for value; in fact, no intervening purchasers whatever, and if the lessee Lindley acquired any interest it would seem, from his own testimony, that he had full notice and knowledge of appellant's rights. That the administratrix, in fact and in law, became the purchaser at her own sale, cannot be successfully disputed, the evidence to that effect is clear, cogent and convincing.

"The courts did not make the law vesting title in the heirs upon the death of an ancestor, nor did they decree that a child shall take equally with and during the lifetime of a surviving member of a community. Those rights depend upon legislative enactment, and our statutes give to a surviving child an immediate interest of which the courts must take notice.

"An administrator stands in a fiduciary relation to those beneficially interested. He is subject to the universal rule that a trustee is bound to do that which will best serve the interests which for the time are intrusted to his care. His own good faith is not enough." *Stewart v. Baldwin*, 86 Wash. 63, 149 Pac. 662.

See, also, *Dormitzer v. German Savings & Loan Soc.*, 23 Wash. 132, 62 Pac. 862.

So, then, under the law, a one-half interest in her father's estate having vested in the appellant upon his death, the mother's course of action, as here clearly established, although perhaps justifiable from her point

of view, was not binding upon the appellant, and under the facts here shown, she had a right to recover that which she had inherited.

But, notwithstanding this right of recovery, we are of the opinion that she may not recover for mesne profits. So far as the record discloses, the income from the farm managed by the mother was used indiscriminately for the support and pleasure of both mother and daughter. As heretofore stated, they at all times lived together; had everything in common; travelled and spent winters together in California; and nothing is called to our attention tending to show that the entire income from the place was not mutually spent and consumed. Under these conditions, a recovery of one-half of the mesne profits, especially in view of the uncertainty as to what those profits were, would be inequitable.

As to the one hundred and sixty-one acre tract sold to Broughton in 1903, it appears that, while the mother conducted the negotiations and arranged the price and terms of the sale, the daughter, then being of legal age, joined in the deed and must have known, from the fact that the purchaser required her signature, that she had some interest therein, and should have demanded her part of the purchase price. Not having done so within the statutory period, her right of action thereon is now barred.

The judgment appealed from is reversed, and the cause remanded, with directions to enter a decree in accordance with the views herein expressed.

PARKER, C. J., BRIDGES, FULLERTON, and MITCHELL, JJ., concur.