[No. 18784. *En Banc.* June 29, 1925.]

F. T. LARRABEE COMPANY, *Appellant,* v. LORENA TRUEDSON MAYHEW *et al., Defendants,* GEORGE A. TRUEDSON *et al., Respondents.*[1]

GUARDIAN AND WARD (10-15)—PARTITION (23)—SALES—VALIDITY —SALE TO GUARDIAN—DEFECTS IN PROCEEDINGS. Where, in partition proceedings, there was no compliance with Rem. 1915 Code, § 1595, providing that the parties may be awarded the just proportion of the true value of the property, in case the real estate cannot be divided without prejudice to the owners, and the whole title was, without any such determination, vested in the mother and general guardian of minors on payment of a specified sum, the transaction amounts, under the guise of a partition, to a sale of the minors' interest to their guardian, and is in direct violation of Rem. Comp. Stat., § 873, providing that no guardian of an infant shall be an interested party in the purchase of any real property being the subject of the suit, except for the benefit of the infant (FULLERTON and PARKER, JJ., dissenting).

[1]Reported in 237 Pac. 308.

LIMITATION OF ACTIONS (10)—RECOVERY OF REAL ESTATE—TERMI-
NATION OF GUARDIANSHIP. Infants whose interests in land were unlaw-
fully sold to their guardian during their minority, may maintain
an action for its recovery within five years after termination of the
guardianship, under the express provisions of Rem. Comp. Stat.,
§ 158.

GUARDIAN AND WARD (27)—INFANTS (7)—SETTLEMENT—VACATING
—ESTOPPEL. Heirs, who, on becoming of age, signed an approval
of their guardian's reports receipting for purported consideration
for the sale of their lands, did not ratify illegal sales of the land to
their guardian, where it appears that they were woefully ignorant
of their rights, had no advice except from the guardian, and did
not know what interest the law gave them, or whether the settle-
ment related to the real or personal property (BRIDGES and MACKIN-
TOSH, JJ., dissenting).

Appeal from a judgment of the superior court for
Lincoln county, Blake, J., entered December 10, 1923,
upon findings favorable to part of the defendants, deny-
ing foreclosure of a mortgage, after a trial to the court.
Affirmed.

*Freece & Pettijohn,* for appellant.

*John M. Cannon, Samuel P. Weaver* and *George M.
Ferris,* for respondents.

TOLMAN, C. J.—This is an action to foreclose a real
estate mortgage executed by the defendant Lorena
Truedson Mayhew about October 21, 1921, as security
for a pre-existing debt. The respondents, two of the
children of Nels Truedson, deceased, by answer and
cross-complaint, set up a claim to an undivided one-
half interest in the land as heirs of their father, free
and clear of the mortgage lien. The trial court entered
a judgment against the defendant Mayhew for the full
amount secured by the mortgage, but denied fore-
closure of the mortgage except as to the interests of
Mrs. Mayhew, which was an undivided one-half in that
part of the property which had been the community
estate of Nels Truedson and Lorena Truedson, his wife,

and an undivided one-third in that part which had been acquired by Nels Truedson before his marriage to Lorena, his second wife. From this decree, the plaintiff has appealed.

It appears that respondents are the children of Nels Truedson by his first wife, who died in the year 1900. In 1901, Nels Truedson, being then the owner of a small part of the land in question, as his separate property, intermarried with his deceased wife's sister, who is made a defendant here under the name of Lorena Truedson Mayhew; and to them three children were born, the defendants Edward McK., Nettie F., and Myrtle M. Truedson. During this marriage, the remainder of the real estate attempted to be mortgaged was acquired. No question is raised in the case as to the amount due upon the mortgage, or the right to foreclose, except as it affects the interests of the several children, and no objections seem to have been raised by either side to determining their several interests in the land in this action. And since the case was fully tried out on the merits without such objections, we will not enter into any inquiry as to whether this is an attempt to try the question of paramount title in a foreclosure action, or, if so, whether that may properly be done.

Nels Truedson died intestate in Lincoln county, Washington, on or about October 30, 1915, leaving surviving him, as we have suggested, his widow, Lorena, now Mrs. Mayhew, two children by his first wife, and three children by his second wife, all of the children being then minors. The widow was appointed administratrix of his estate, qualified as such, and was thereafter appointed guardian of the persons and estates of George A. Truedson and Lena J. Truedson (now Lena J. Bradley), duly qualified as such guardian, and continued to act as such guardian until her wards be-

came of legal age. The daughter, Lena, became eighteen years of age on February 16, 1918, and the son, George, became twenty-one on February 25, 1919.

In due course of the probate proceedings, Mrs. Mayhew, as administratrix, filed her final account and petition for distribution; time for the hearing thereof was set; notice duly given, and a decree of final settlement was entered February 20, 1917, by which the final report was approved, but it was directed that distribution of the estate should abide the result of partition proceedings which had theretofore been instituted. Those proceedings appear to have been instituted in the same cause under § 1590 *et seq.*, Rem. 1915 Code, afterwards repealed and not now in force. The controversy, to a large extent, is as to whether these statutory provisions were properly complied with; such as, whether proper notices were given, whether the commissioners took and subscribed a proper oath, and other objections of like nature, which need not be mentioned or considered, because, in the main, they were at most but irregularities only, cured by the final order of confirmation, and if going beyond that, the statute not now being in force, no good would be achieved by discussing them, since, as we see it, the judgment must be affirmed because of a still more vital error in the partition proceedings.

The statute, § 1595, Rem. 1915 Code, provides in effect that, where real estate cannot be divided without prejudice or inconvenience to the owners, the court may assign the whole to one or more of the parties entitled to share therein, provided the party to whom it is assigned shall pay to the other interested parties their just proportion of the true value, or secure the same to their satisfaction. Although there was no allegation in the petition that the real estate could not be divided without prejudice or inconvenience, and no

report by the commissioners to that effect, the commissioners proceeded to, and did, determine that the total value of the entire estate, including not only the real estate, but the personal property and money on hand, amounted to the sum of $19,291.19, and they reported to the court that they had assigned the entire estate, both real and personal, to the widow, administratrix and guardian, Lorena Truedson, subject to the payment by her to each child of the deceased of $1,937.12, which, from the report, it appears that Lorena Truedson agreed to. This report was filed on March 12, 1917, and on the same day an order of confirmation was made by the court confirming the same in every detail, and purporting to divest each child of the deceased of his interest in both real and personal property of the estate, and to confirm the whole thereof in Lorena Truedson, without any finding to the effect that the property could not be partitioned without prejudice or inconvenience. It further appears that the minor heirs were not paid any part of these sums so directed to be paid to them, nor was the payment of the same secured to them in any manner or at all.

Afterwards, when respondents reached full legal age, each was taken in due course to the office of the attorney for the administratrix and guardian, where a note was signed for the sum supposed to be due each, but kept and retained by Mrs. Mayhew, and the respondents each, in due course, signed an approval of the final account of the guardian as to him, acknowledged full payment of all sums due, and the guardian was afterwards discharged as to the the person and estate of each of these wards. Whether Mrs. Mayhew was ever appointed as guardian of the estates of the three younger children, or simply assumed to act as their natural guardian, does not clearly appear from the record; but both parties here seem to assume that

she was such duly appointed and qualified guardian, and the findings of the trial court are to the effect that the three minors alluded to, or the two still of non-age, appeared in this action by Lorena Truedson Mayhew, their general guardian; and since no exceptions were taken to that finding, and no contention is made that such was not the fact, we shall accept the findings as conclusive.

What seems to us to be the paramount question is whether or not what was here done comes within the inhibition of the statute, § 873, Rem. Comp. Stat. [P. C. § 8319], which reads:

"Neither of the referees, nor any person for the benefit of either of them, shall be interested in any purchase, nor shall the guardian of an infant be an interested party in the purchase of any real property being the subject of the suit, except for the benefit of the infant. All sales contrary to the provisions of this section shall be void."

The statute is but declarative of the common law, and presents a wholesome and long-followed rule with which all are, or should be, familiar. The same situation, in legal effect, was presented and exhaustively discussed in *Dormitzer v. German Savings & Loan Society*, 23 Wash. 132, 62 Pac. 682, and the doctrine there announced has been many times since affirmed. *Roger v. Whitman*, 56 Wash. 190, 105 Pac. 628, 134 Am. St. 1105, 21 Ann. Cas. 272; *Miller v. Winslow*, 70 Wash. 401, 126 Pac. 906, Ann. Cas. 1914B 833; *Stewart v. Baldwin*, 86 Wash. 63, 149 Pac. 662; *Hemrich v. Hemrich*, 117 Wash. 124, 201 Pac. 10; *de la Pole v. Lindley*, 118 Wash. 387, 204 Pac. 12.

That what was here accomplished under the guise of partition was in fact and in law a sale, cannot be doubted. The proceedings purported to take from the heirs that title which vested in them upon the death of

their father, for a money consideration, and vested it in the mother, who was the guardian. The opportunity for harm to the minors was greater than would have been the case in an ordinary public or private sale in the course of probate proceedings, because in such proceedings there would have been general notice and opportunity for competitive bids, while here there was nothing of the sort. The general rule as to what is a purchase, and who is a purchaser, is stated in *Younkman v. Hillman*, 53 Wash. 661, 102 Pac. 773.

"Broadly speaking, a purchaser is one who acquires title otherwise than by descent; but in its generally accepted meaning it refers to the acquisition of property for a valuable consideration."

There is no question but that the guardian was here attempting to acquire the title vested in the minor heirs, for a valuable consideration, and the act falls squarely within the prohibition of the statute, and of the common law.

But, it is contended that the three-year statute of limitations should apply, and that the two older children are thereby barred. We think not. Section 158, Rem. Comp. Stat. [P. C. § 7542], reads:

"No action for the recovery of any real estate sold by an executor or administrator under the laws of this state, or the laws of the territory of Washington, shall be maintained by any heir or other person claiming under the deceased, unless it is commenced within five years next after sale, and no action for any estate sold by a guardian shall be maintained by the ward, or by any person claiming under him, unless commenced within five years next after the termination of the guardianship, except that minors and other persons under legal disability to sue at the time when the right of action first accrued may commence such action at any time within three years after the removal of the disability."

Clearly the heirs have here affirmatively asserted their rights within five years from the termination of the guardianship proceedings, and those rights are not barred.

Finally, it is urged that the two older children have ratified the partition sale by their acts after reaching full age, in approving the reports of their guardian, and receipting for the purported consideration. There can be no ratification without full knowledge, and we think it clearly appears here that, at the time of the guardian's purported settlement and the filing of her final account, these young people were woefully ignorant of their rights as heirs of their deceased father. True, the attorney for the guardian testified in effect that he prepared all of the papers in advance of the visits of each of them to his office; that he went through the files or the records with them, but that they depended upon him to have everything right, and that from his explanation they ought to have understood the matter, and he judged that they did. Under the peculiar circumstances of this case, this is far too general to be taken as overcoming the testimony given by these heirs themselves, which shows generally, that they knew but little about their father's property; did not know what part was community and what part was separate property—in fact, did not know the meaning of these terms; that they had no advice whatever except from their stepmother; denied that explanation or information was given them by the attorney; did not know what interest the law gave them in their father's property, or any part of it; did not know whether the note offered by the stepmother evidenced the consideration for their interest in the real estate or their interest in the personal property, either or both; that the note executed by the stepmother was shown to them, but at her request had remained in her

possession, and she has never paid any part thereof, either principal or interest. Neither had completed the eighth grade in a country school, and their general information and knowledge of affairs was extremely limited. All of this was, of course, well known to the guardian and required of her their fullest protection. To hold them to a ratification under these circumstances would do violence to every principle of substantial justice.

We conclude that the judgment of the trial court is right and must be, and is hereby, affirmed.

HOLCOMB, MAIN, and MITCHELL, JJ., concur.

ASKREN, J. (concurring)—I concur in the majority opinion because of the result therein obtained. I feel very doubtful as to the ground upon which the decision is rested, for I fear that, under our partition statutes, the superior court had a right to partition this property to the wife. However, the court had no power to establish the partition to the wife until the sums awarded the children should be paid or secured. Section 1596, Rem. Code, provides:

". . . but such partition shall not be established by the court until the sums so awarded shall be paid to the parties entitled to the same, or secured to their satisfaction."

It clearly appears from the evidence that the minor heirs were not paid, nor were the amounts due them actually secured to their satisfaction. This being the case, the heirs would be entitled to recover from their mother their interest in this property at any time they found it in her possession. Having the right to recover from the mother, they may also establish their title as against anyone claiming through the mother, if the persons so claiming have no greater right than that held by appellant here. The testimony in this case is

conclusive that the appellant is the holder of a mortgage taken as security for a pre-existing indebtedness. The rule is well established in this state that one taking property as security for a pre-existing indebtedness is not a purchaser in good faith and for value, and that rights may be urged against such an one that can be urged against those through whom he claims.

Nor can the contention that the wife secured a statement from the minors and placed it on record showing that they had been paid, in any wise avail the appellant, for the appellant's own testimony is that it did not see the record nor rely upon it, but took for granted that the title was in the wife because other companies had made her loans upon the same property.

BRIDGES, J. (dissenting)—I agree with all portions of the opinion of the court except the conclusion that the mortgage does not cover the interest in the mortgaged property formerly held by the two older children. The opinion may be, and doubtless is, correct as between those children and their guardian, and that the latter could not claim the property as against the former. It must be remembered, however, that the mortgagee had a right to, and did, rely entirely on what the record showed. It showed that, after these two children had come of age, they formally admitted that the guardian had purchased their interest in the property and had fully paid them for it. The law presumes that one who has reached lawful age is competent to transact business, and on this presumption all otherwise innocent parties are entitled to rely. There is nothing in the record, that I know of, which shows that the mortgagee knew that these children were inexperienced in business and did not understand the nature of the representations they made the public records show. I think they have so conducted them-

selves that they will not now be permitted to repudiate what they did, when such repudiation will be injurious to those who had a right to rely upon the representations made by them. I think it should be held that the mortgage covered the interest of these two children who had come of age. To that extent I dissent from the court's opinion.

MACKINTOSH, J., concurs with BRIDGES, J.

FULLERTON, J. (dissenting)—There are irregularities in the probate proceedings involved in the controversy in question in the present action, some of them of sufficient moment possibly as to require reversal on appeal or a setting aside of the proceedings in some other form of direct attack. But I cannot think them vulnerable to a collateral attack (the form of attack made upon them in the present instance), much less can I think them void for the reason given in the majority opinion. The majority hold the partition proceedings therein had were "in fact and in law a sale" of the property, and therefore void.

With this holding I am unable to agree. The proceedings were had in accordance with the then existing statutes. The statutes are found in Rem. Code at §§ 1579 to 1609. These sections provide a scheme for partitioning estates among the heirs of the estate. There is nothing unusual in them. They provide in substance that, at any time after the settlement of the final account of the executor or administrator, the court shall proceed to distribute the residue of the estate among the persons who are by law entitled thereto; that the application for distribution may be made by any one interested in the estate either as executor, administrator, heir or legatee; that notice of the application shall be given in the manner required in an application for the sale of land by an executor or ad-

ministrator; and that the court may appoint commissioners to make the partition. Sections 1595 and 1596 of the act read as follows:

"When any such real estate cannot be divided without prejudice or inconvenience to the owners, the court may assign the whole to one or more of the parties entitled to share therein, who will accept it, providing the party so accepting the whole shall pay to the other parties interested their just proportion of the true value thereof, or secure the same to their satisfaction, and the true value of the estate shall be ascertained by the commissioners appointed by the court, and sworn for that purpose.

"When any tract of land or tenement shall be of greater value than either party's share of the estate to be divided, and cannot be divided without injury to the same, it may be set off, by the commissioners appointed to make partition, to either of the parties who will accept it, giving preference as prescribed in the preceding sections; provided the party so accepting shall pay or secure to one or more of the others such sums as the commissioners shall award to make the partition equal, and the commissioners shall make their award accordingly; but such partition shall not be established by the court until the sums so awarded shall be paid to the parties entitled to the same, or secured to their satisfaction."

There is here, it seems to me, direct warrant in the statute for the court to do what it did do in this instance, set aside the whole of the real property to one of the heirs of the estate and require the heir to pay to the other heirs the value of their interests, and I am utterly unable to understand how a thing which is done by authority of law can be in violation of law.

But perhaps the real ground on which the majority rest their conclusion is that the property was awarded to the administratrix, and since she was the general guardian of some of the infant heirs, she was not quali-

fied to take the property. If this be the purport of the decision, I also think it without foundation. The statute does not make this a disqualification, nor can I conceive of any public policy which disqualifies her on that ground. The only limitation imposed by the ` statute is that the person to whom it is assigned shall be "entitled to a share therein," and here the administratrix was so entitled; in fact, her interest was larger than the interest of any other person. The administratrix had no voice in determining whether the property could or could not be equitably divided, and no voice in determining how much the party taking had to pay for the interests taken. The partition was the act of the court, not that of the administratrix, and it is not to be supposed that the court could not or did not protect the interests of the heirs.

· I, of course, concede the rule that a trustee cannot lawfully become the purchaser of the property of his *cestui que trust* at a public sale of the property where he is the inducing cause of the sale, but I cannot think that a partition of property is in any sense a sale of property; and this, whether the property be divided between the respective owners equally, or unequally with owelty to the other owners. The statute does not so denominate it. On the contrary, that the legislature sought to make a distinction between a partition and a sale is evidenced by the fact that the statute makes an alternative provision for a sale of the property and a division of the proceeds of the sale if the commissioners appointed to make the partition recommend it and the court approves of the recommendation. Again, the doctrine of owelty of partition is ancient. From the earliest times, courts of equity, in the absence of statute authorizing it, have exercised the power to divide property unequally between co-owners and award compensation to equalize the division. Yet no

such court has, in so far as my investigation has gone, treated or regarded the action as a sale. Moreover, if the definition of a sale noted by the majority be applicable to the situation, then there never can be any partition of property between co-owners where one occupies the relation of trustee to another. From the very necessities of the case the title one of the owners has in a part of the property is taken from him and vested in another, and if the transaction is void when one of the parties receives the greater portion of the property, it is equally void when there is an equal division.

The statute is but declarative of the equitable principle noted, and since the proceeding has the sanction of both equity and the statute, I cannot persuade myself that it is void.

I think I need not pursue the inquiry further, nor would I pursue it at all but for the matter now to be mentioned. The statute under which these proceedings were had stood on the statute books from early territorial days until its repeal by the enactment of the late probate code. The method of partitioning property among the heirs of estates therein pointed out has been the common practice of courts sitting. in probate. Many titles depend upon the validity of the proceedings, and I fear a number of these are unsettled by the decision.

It is my opinion that the decree of the trial court should be reversed.

PARKER, J. (dissenting)—I concur with the views and conclusions of Judge Fullerton.